VALAN, APPELLANT, *v.*
CUYAHOGA COUNTY SHERIFF,
APPELLEE.

(No. 49647—Decided
November 22, 1985.)

*John C. Meros* and *Milt Schulman,* for appellant.
*John T. Corrigan,* prosecuting attorney, for appellee.

ANN MCMANAMON, J. Appellant Michael Valan appeals a judgment of the trial court, which affirmed a decision by the State Personnel Board of Review ("the board") removing him from his employment as a Cuyahoga County Deputy Sheriff. Valan raises three assignments of error.[1]

----

[1] The assignments of error are:

On August 17, 1983, appellant began his tour of duty at the Cuyahoga County Correction Center on the 11:30 p.m. to 7:30 a.m. shift. He was scheduled to guard two adjoining cell units or "pods," which were designated as 8-G and 8-H. Shortly after the shift began, Officer Daniel Bushnell relieved appellant of his duties in 8-H, but, at approximately 4:20 a.m., was reassigned to other duties, leaving Valan in charge of both pods.

According to staff procedure, the officer in charge of pods during the night shift is responsible for security checks and informal inmate counts every thirty minutes. The officer is also required to make two official inmate counts. Such a count is made in writing on a "count slip," which is retained as an official record of the sheriff's department.

Between 5:10 a.m. and 5:30 a.m. on August 18, a prisoner in pod 8-H committed suicide. During the course of an investigation of the suicide, a discrepancy appeared in the count slip for pod 8-H for the 4:45 a.m. count: The slip contained the signature "Bushnell," although Bushnell was not on duty in pod 8-H at that time.

Because of the apparent discrepancy, both Valan and Officer Bushnell were interviewed by sheriff's department personnel on August 25, 1983. Appellant consistently denied that he signed the 4:45 a.m. count slip for pod 8-H, and he reiterated these denials during a polygraph examination which he was required to take. Both the August 25 interview and the September 6 polygraph were part of an official sheriff's department investigation.

The handwriting specimens of appellant and Officer Bushnell were submitted to Dr. Philip Bouffard, a forensic document examiner. Dr. Bouffard concluded that Valan wrote Bushnell's name on the count slip.

The sheriff discharged appellant as of September 27, 1983. Although the sheriff furnished Valan with a specification of charges, he provided no opportunity for Valan to respond to them before his discharge. The removal order stated that Valan falsified a sheriff's department record, and knowingly made a false and misleading statement in the course of an official investigation.

On appeal the hearing officer found that the charges against Valan had been proven but recommended that the removal be modified to a thirty-day suspension. The board rejected the suggested leniency and affirmed Valan's discharge. The trial court affirmed.

I

In his first assignment of error, appellant argues that the removal order was not supported by reliable, substantial and probative evidence and was not in accordance with the law.

R.C. 119.12 governs appeals from administrative agencies, and provides in pertinent part:

"The court may affirm the order of the agency complained of in the appeal if it finds, upon consideration of the entire

---

I

"The lower court erred in affirming the order removing the appellant since the order was not supported by reliable, probative and substantial evidence and was not in accordance with law."

II

"The lower court erred in ruling that it was without authority to modify the order of removal, when, in fact, the lower court found that removal was too harsh a punishment for the infraction."

III

"The lower court erred in affirming the order removing the appellant though [sic] appellant was not afforded a pre-termination hearing before being removed."

record and such additional evidence as the court has admitted, that the order is supported by reliable, probative, and substantial evidence and is in accordance with law. In the absence of such a finding, it may reverse, vacate, or modify the order or make such other ruling as is supported by reliable, probative, and substantial evidence and is in accordance with law. * * *"

In *Andrews* v. *Bd. of Liquor Control* (1955), 164 Ohio St. 275 [58 O.O. 51], paragraph one of the syllabus, the Supreme Court held that in an appeal pursuant to this section a reviewing court must evaluate all of the evidence "* * * as to the credibility of witnesses, the probative character of the evidence and the weight to be given it, and, if from such a consideration it finds that the * * * [administrative] order is not supported by reliable, probative, and substantial evidence and is not in accordance with law, the court is authorized to reverse, vacate, or modify the order * * *."

The scope of review set forth in *Andrews* was recently clarified in *Univ. of Cincinnati* v. *Conrad* (1980), 63 Ohio St. 2d 108 [17 O.O.3d 65]. *Conrad* reaffirmed the *Andrews* court's reasoning that the legislature intended to authorize the reviewing court to weigh the evidence on an appeal from an administrative agency. The court in *Conrad* stated at 111:

"* * * [D]etermining whether an agency order is supported by reliable, probative and substantial evidence essentially is a question of the absence or presence of the requisite quantum of evidence. Although this in essence is a legal question, inevitably it involves a consideration of the evidence, and to a limited extent would permit a substitution of judgment by the reviewing Common Pleas Court.

"* * *

"Where the court, in its appraisal of the evidence, determines that there exist legally significant reasons for discrediting certain evidence relied upon by the administrative body, and necessary to its determination, the court may reverse, vacate or modify the administrative order. * * *"

It is appellant's position that legally significant reasons exist for discrediting certain evidence relied upon by the agency below.

Appellant first contends that no substantial evidence was presented that he signed Bushnell's name to the count slip. We disagree.

At the hearing before the board, appellee presented the testimony of Dr. Philip Bouffard, a handwriting expert. Dr. Bouffard testified on direct examination that he was asked to examine the handwriting on the count slip and compare it with two other handwriting specimens. It was Dr. Bouffard's opinion that the signature which appeared on the count slip was that of Valan.

Valan initially implies that Dr. Bouffard's examination was suspect, since he repeatedly admitted on cross-examination that he knew that the matter for which he was retained involved a "questioned document where someone signed someone else's name." He further argues that in conducting the examination, it was elementary for Dr. Bouffard to immediately eliminate Officer Bushnell as the forger of his own name, since the doctor assumed that he was investigating a matter wherein an officer had signed someone else's name, and since the remaining signatures were dissimilar.

We agree with appellant's contention that it would have been obvious to Dr. Bouffard that the document he was asked to examine might not be legitimate, since there would be no other reason for seeking his expertise. However, the record clearly demonstrates that Dr. Bouffard had formulated no opinions prior to his examination of the handwriting specimen

in question. The doctor testified that he did not assume that he was investigating a matter involving an officer signing someone else's name and, while the officer who presented the matter to him asked him to determine who had written the name "Bushnell" on the count slip, no suggestions were made as to the identity of the signer.

Appellant next contends that the expert's opinion that Valan falsified the count slip was unreliable since Dr. Bouffard was never told that other individuals may have had access to the document, and was given only the two handwriting specimens of Valan and Officer Bushnell. It is Valan's position that this caused the doctor's examination to focus unfairly on appellant.

Dr. Bouffard admitted both on direct and cross-examination that he was never informed that others may have had access to the count slip, and that if there were an "open set," *i.e.,* an unlimited number of persons with access, a corresponding possibility existed that some other person may have signed the questioned document. However, the expert stated that it is "of help but not a necessity" to a handwriting expert, in determining who is responsible for a signature, to know the "spectrum" of persons who may have had access to the questioned document. Moreover, as will be shown, the evidence reveals that this fact situation involved a "closed set," *i.e.,* a limited number of persons with access to the questioned document.

Valan contends that other employees had access to the count slip. At the hearing, Officers Bushnell and Hennings both testified that as many as four persons might have had access to the count slips as they were processed through to jail authorities: (1) the pod officer who fills out the slip; (2) the pod officer's partner, who may carry it to the control room; (3) the control operator, who handles it as it passes from floor control to master control; and (4) the person who carries it to floor control, and who also may handle it.

Appellant urges that testimony presented at the hearing established that count slips are often turned in with a missing signature, and are subsequently signed by others. Correction Officers Hennings and Shea testified that this procedure might occur because of the expediency of making the count.

The full substance of the testimony of Valan's witnesses fails to substantiate appellant's assertions. Officer Hennings averred that he had seen one officer sign another's name on only one prior occasion, and specifically stated the practice was uncommon. Officer Shea testified that he witnessed such a practice on only one prior occasion; that the practice violated a written sheriff's department rule; and that he had no knowledge of any situation which would cause one officer to sign the name of another officer who had not actually taken the count.

We find that the board's decision is supported by reliable, probative, and substantial evidence. Despite repeated denials made during the course of investigation by appellee, Valan told the hearing examiner that he could not remember whether or not he had affixed Bushnell's name to the count slip. The testimony of Dr. Bouffard revealed that Valan falsified the signature on the count slip. Finally, evidence that the signature might have been signed by a third officer is conflicting. As the court in *Conrad, supra,* stated at 111:

"In undertaking this hybrid form of review, the Court of Common Pleas must give due deference to the administrative resolution of evidentiary conflicts. For example, when the evidence before the court consists of conflicting testimony of approximately equal weight, the court should defer to the determination of the administrative body, which, as the fact-finder, had the opportunity to observe the demeanor of

the witnesses and weigh their credibility. * * *"

The hearing examiner found that Valan signed Bushnell's name to the count slip and denied responsibility for this action during subsequent investigations. We will not disturb these findings when they are supported by reliable, probative, and substantial evidence.

Finally, with respect to appellant's assertion that he was terminated as a result of animosity between himself and Sheriff McFaul, the appointing authority, we agree with the trial court's conclusion that it is not the function of a reviewing court to agree or disagree with the appointing authority's possible motivations in requesting termination.

Appellant's first assignment of error is not well-taken.

## II

In his second assignment of error, Valan argues that the lower court erred in ruling that it was without authority to modify the penalty imposed by the board. In its opinion, the trial court stated, in pertinent part:

"* * * There are compelling reasons for believing that termination was too harsh a punishment for appellant's infraction and that the prolonged adversarial relationship caused by appellant's numerous lawsuits against the County Sheriff could have motivated the severity of punishment. Yet, it is not this Court's function to sit in judgment of the wisdom of a policy decision, only to determine the legality of the same."

It is appellant's position that since Valan's infraction did not warrant removal, the trial court could have accepted the adjudication but modified the penalty to a suspension. We disagree.

It is well-settled that a reviewing court has no power to modify the order of an agency as defined in the Administrative Procedures Act (R.C. 119.01 et seq.). See Henry's Cafe, Inc. v. Bd. of Liquor Control (1959), 170 Ohio St. 233 [10 O.O.2d 177]. In Western Reserve Psychiatric Hospital v. Knight (1980), 69 Ohio App. 2d 108 [23 O.O.3d 140], this court, citing Henry's Cafe, stated at 109:

"* * * R.C. 119.12 has been interpreted to mean that it is only when the Court of Common Pleas does not find such supporting evidence that it has the power to consider reversal or modification of the order appealed from; and, where such court finds that an order is supported by the evidence, it has no authority to modify the penalty imposed by the board. * * *"

Appellant's reliance on Maiden v. Fayette Cty. Bd. of Retardation (1984), 16 Ohio App. 3d 196, is misplaced. Maiden interpreted the authority of the State Personnel Board of Review, pursuant to R.C. 124.03 and 124.34, to modify a punishment imposed by the appointing authority. It is inapplicable insofar as the instant case concerns the authority of a reviewing court to modify the board's order pursuant to R.C. 119.12. The board's authority to modify a penalty does not extend to a reviewing court where the requisite quantum of evidence supports the board's decision.

Since we have determined that the board's order was supported by reliable, substantial, and probative evidence, we find that the trial court correctly determined that it was without authority in an appeal pursuant to R.C. 119.12 to substitute its judgment for that of the board and to modify the penalty imposed.

Appellant's second assignment of error is not well-taken.

## III

In his third assignment of error, Valan argues that the board's order was not in accordance with the law, as he was never afforded a pre-termination hearing. By letter dated September 26, 1983, the sheriff advised Valan that he was being discharged, and specified the

charges against him. On January 9, 1984, Valan filed a motion for disaffirmance of the order on the grounds that he should have been afforded an opportunity to respond to the charges before his dismissal. The board refused to disaffirm Valan's discharge on this ground, and the trial court did not address the issue on its review.

In its recent decision in *Cleveland Bd. of Edn.* v. *Loudermill* (1985), \_\_\_\_ U.S. \_\_\_\_, 84 L. Ed. 2d 494, the United States Supreme Court affirmed a decision of the Sixth Circuit Court of Appeals which held that the protections afforded civil service employees under Ohio's statutory scheme (R.C. 124.34) could not be applied in such a way as to deny the rudiments of federal due process, and that the failure of municipalities to afford public employees an opportunity to present evidence challenging proposed discharges, prior to removal, violates the Fourteenth Amendment of the federal Constitution. *Loudermill* involved the consolidated appeals of two classified civil service employees under R.C. 124.34 who were discharged by their respective municipal employers. Both challenged the propriety of their discharges alleging, *inter alia,* that their employers' failure to afford a pre-termination hearing, or an opportunity to respond to the charges against them prior to discharge, constituted denial of their procedural due process rights under the Fourteenth Amendment. Both employees sought relief in the United States District Court for the Northern District of Ohio, predicating their claims on Section 1983, Title 42, U.S. Code.

The district and circuit courts agreed that the Ohio statute conferred property rights in continued employment upon the employees. The Sixth Circuit determined that the state could abrogate this entitlement only by observing the strictures of due process.

721 F. 2d 550, 559. The United States Supreme Court agreed. After a lengthy analysis and application of the factors set forth in *Mathews* v. *Eldridge* (1976), 424 U.S. 319, 333 to be used in balancing the competing interests of the government and the individual that must be accommodated to assess what process is due, the United States Supreme Court concluded that the government's interests in immediate termination of unsatisfactory employees and avoidance of administrative burdens of the pre-termination process do not outweigh the private interest in retaining government employment. *Loudermill, supra,* at 505.

The state urges that any procedural defects below were cured by the post-discharge hearing before the board provided in R.C. 124.34. This argument was also raised and rejected in the *Loudermill* case. The United States Supreme Court expressly held that the fact that Ohio law provides for full post-termination evidentiary hearings does not "suggest" that no other due process is necessary. Although the Ohio Supreme Court has held in *Parfitt* v. *Correctional Facility* (1980), 62 Ohio St. 2d 434 [16 O.O.3d 455], that there is no constitutional requirement for pre-termination process, the *Loudermill* court took note that the federal constitutional right cannot be diminished by this state's post-termination procedure. *Loudermill, supra,* at 503-504.

Under the authority of the United States Supreme Court's decision in *Loudermill,* we hold that Valan's federal due process rights were violated when he was denied a hearing prior to his termination.

Notwithstanding our decision, we are not constrained to reverse the orders of the lower court and the board. Nowhere in the *Loudermill* opinions does either court indicate that failure to afford a pre-termination hearing constitutes grounds for disaffirming a removal order. The Sixth Circuit Court

of Appeals specifically stated that "upon remand the appellants may seek to prove that they sustained damages stemming from the state's failure to provide any pre-termination due process." 721 F. 2d at 564. Appellant has demonstrated no prejudice as a result of the sheriff's failure to grant a pre-termination hearing, and it would be a vain act to remand this case for a hearing on the sufficiency of the grounds for his discharge when we have determined that sufficiency from the record before us.

However, where a procedural due process right to a pre-termination hearing is violated, nominal damages may be recovered. See *Carey* v. *Piphus* (1978), 435 U.S. 247. The *Carey* court stated at 266-267:

"Because the right to procedural due process is 'absolute' in the sense that it does not depend upon the merits of a claimant's substantive assertions, and because of the importance to organized society that procedural due process be observed, see *Boddie* v. *Connecticut,* 401 U.S. 371, 375 (1971); *Anti-Fascist Committee* v. *McGrath,* 341 U.S., at 171-172 (Frankfurter, J., concurring), we believe that the denial of procedural due process should be actionable for nominal damages without proof of actual injury. We therefore hold that if, upon remand, the District Court determines that respondents' suspensions were justified, respondents nevertheless will be entitled to recover nominal damages not to exceed one dollar from petitioners." (Footnotes omitted.)

Accordingly, we affirm the trial court's affirmance of the board's removal order, and reverse and remand for further proceedings upon appellant's procedural due process claim.

*Judgment affirmed in part,*
*reversed in part,*
*and cause remanded.*

PARRINO, C.J. and CORRIGAN, J, concur.