MANNING, APPELLANT, *v.*
CLERMONT COUNTY BOARD OF
COMMISSIONERS ET AL., APPELLEES.

(No. CA89-02-008—Decided
December 4, 1989.)

*Andrew B. Dennison,* for appellant.

*Donald W. White,* prosecuting attorney, and *Timothy E. Schneider,* for appellees.

*Per Curiam.* This is an appeal by plaintiff-appellant, Danny Manning, from a decision of the Clermont County Court of Common Pleas in favor of defendants-appellees, the Clermont County Board of Commissioners and the Clermont County Assistant County Administrator, in a civil rights suit under Section 1983, Title 42, U.S. Code.

Manning was employed in the classified civil service by the board of commissioners as a treatment plant operator for the Clermont County Sewer District. On Saturday, May 3, 1986, he was scheduled to report for work at 8:00 a.m. at the O'Bannon Creek Treatment Plant.

David Wainscott, one of Manning's coworkers, arrived at the O'Bannon plant at approximately 7:50 a.m. that day. He unlocked the door to the main building and proceeded to the operator's room on the second floor. He performed some perfunctory duties and then clocked in at exactly 8:00 a.m. He did not see or hear Manning at this time.

Wainscott continued to work around the plant until approximately 8:15 to 8:20 a.m., at which time he telephoned his supervisor, Thomas Rine, to inform him that Manning was not at work. During this conversation, Wainscott saw Manning driving his car down the lane toward the plant and so informed Rine. After a few minutes, Wainscott saw Manning in the operator's room but did not see or hear him use the time clock. At the end of the work day, Manning's time card showed a clock-in time of 8:00 a.m.

On May 7, 1986, R. Ernest Stickler, a sewer district employee, instituted an investigation relating to Manning's alleged failure to report to work on time. Manning told Stickler that he had experienced car trouble on his way to the plant. Upon arrival, he clocked in at 8:00 a.m. and returned to the parking lot to work on his car. He then took it for a short test drive and returned to the plant. He was returning to work when Wainscott saw him driving down the private lane to the plant. Wainscott told Stickler that Manning was not at the plant at 8:00 a.m. but admitted that after he had clocked in, he went into an adjacent building. He stated that it was possible that Manning had clocked in without his knowledge. Based upon his investigation, Stickler recommended that Manning be discharged for altering his time card on May 3, 1986.

On May 22, 1986, appellant received a notice of a pretermination hearing from William Michael Potts, Assistant County Administrator. The notice stated that it had been recommended that Manning be discharged for dishonesty or other failure of good behavior and that a hearing would be conducted on June 2, 1986.

The pretermination hearing was held on June 5, 1986, at which time Manning was present with his union representatives and had an opportunity to cross-examine his accusers and respond to their allegations. Both Rine and Wainscott testified for the sewer district. In particular, Rine testified that a sewer district employee had told him about the time card tampering at the O'Bannon plant but he refused to disclose the identity of the employee. Neither Manning nor his representatives requested the personal presence of the informant, who was never identified.

On June 13, 1986, Potts submitted a report to the board of commissioners. He determined that Manning had a motive for altering his time card because of a poor attendance record. He recommended that Manning receive a three-day suspension and that the board postpone execution of the suspension until the Clermont County Prosecutor and Sheriff had time to conduct a criminal investigation into time card tampering at the O'Bannon plant.

At a meeting on June 27, the board rejected Potts' recommendation and decided that the appropriate sanction was termination. However, they postponed execution of any disciplinary ac-

tion until after completion of the criminal investigation.[1]

Donald Boerner was a branch manager for the Stromberg-Mite Corporation, the company which installed and serviced the time clock at the O'Bannon plant. On July 7, 1986, at the sewer district's request, he examined time cards for the period near May 3, 1986. He selected Manning's time card, specifically the printed date of May 3, 1986, as exhibiting characteristics of an altered time card. He signed a letter prepared by a sewer district employee which stated that "Dan Manning on May 3, 1986, did in fact alter the punch-in time." This information was used solely for the investigation and was not considered by the board in making its decision to discharge Manning.

On July 10, 1986, Potts held an informal meeting with Manning and his union representative. Potts gave Manning a copy of Boerner's letter and advised him to resign or he would be fired. Manning refused to resign.

Manning received an order of removal signed by Jerry R. McBride, president of the Clermont County Board of Commissioners. The order stated that Manning was being removed from his position for "dishonesty and/or other failure of good behavior." It also advised him that he had the right to appeal the board's decision through the grievance procedure in the parties' collective bargaining agreement. On July 17, 1986, the board passed a formal resolution removing Manning from his position.

On April 15, 1987, Manning filed a complaint in the court of common pleas against the board and Potts as assistant county administrator. It alleged, among other things, a deprivation of his civil rights pursuant to Section 1983, Title 42, U.S. Code, and breach of contract for alleged violations of the collective bargaining agreement.

At trial on August 9, 1988, the trial court dismissed the contract claim, with Manning's concurrence. The trial continued on Manning's sole remaining cause of action, the civil rights claim. Subsequently, the trial court issued a decision finding in favor of Potts and the board, which was incorporated into a judgment entry filed on January 24, 1989. This appeal followed.

Manning presents one assignment of error for review as follows:

"The trial court erred to the prejudice of the plaintiff-appellant by finding and concluding that the conduct of the defendants-appellees' [sic] board of commissioners and assistant county administrator in failing to administer the procedures set forth in, and required by, the collective bargaining agreement satisfied the due process requirements of the Fourteenth Amendment of the Constitution of the United States for pre-termination procedure to permit the board of county commissioners to constitutionally terminate a tenured employee possessing property entitlement to his employment."

He states, and it is not disputed, that the provisions of the parties' collective bargaining agreement were not followed in several respects. He contends that R.C. 124.34, which creates a property right in continued public employment, sets forth the procedures that must be followed before a public employee may be discharged. Because this statute creates the property interest, he argues, it also sets forth the minimum requirement of due process. The grievance procedures of the collective bargaining agreement, by virtue of the provisions of R.C. Chapter 4117,

---

[1] The Clermont County Sheriff's Office conducted a criminal investigation which was discontinued after Manning's termination. No charges were filed.

were substituted for the procedures set forth in R.C. 124.34. Therefore, Manning concludes, because the provisions of the collective bargaining agreement were not followed, he was deprived of a property interest without due process of law. We find this assignment of error is not well-taken.

It is undisputed that Manning, as an Ohio public employee, enjoyed a property interest in continued employment during good behavior, and that he could not be deprived of that property interest without due process of law. *Cleveland Bd. of Edn.* v. *Loudermill* (1985), 470 U.S. 532. The question presented here is what procedures does the Due Process Clause require before a tenured public employee may be discharged. *Loudermill, supra,* at 541, states that "[t]he answer to that question is not to be found in the Ohio statute[s]." Manning contends that, pursuant to state law, the collective bargaining agreement sets forth the minimum due process requirements. We disagree. Although we find no Ohio law directly on point, numerous federal cases suggest that although state law creates the property interest, the minimum due process requirements are defined by federal law.

In *Goodrich* v. *Newport News School Bd.* (C.A. 4, 1984), 743 F. 2d 225, a tenured schoolteacher claimed that she was denied due process of law because she was not given three evaluations prior to receiving notice of termination as required by a state regulation. The court of appeals held that she had been afforded her procedural due process rights because she received adequate notice, a specification of the charge against her, and a hearing prior to her discharge. It stated:

"When the minimal due process requirements of notice and hearing have been met, a claim that an agency's policies or regulations have not been adhered to does not sustain an action for redress of procedural due process violations. *Atencio* v. *Board of Education of Penasco Independent School District,* 658 F. 2d 774 (10th Cir. 1981); *Bates* v. *Sponberg,* 547 F. 2d 325 (6th Cir. 1976).

"* * *

"* * * The enforcement of state regulations, such as those existing in this case, is to be done through the state court system and not in an action under 42 U.S.C. §§ 1981 and 1983, where no federal constitutional guarantees have been violated." *Id.* at 227.

In *Smith* v. *Pittsburgh* (W.D. Pa. 1984), 585 F. Supp. 941, reversed on other grounds (C.A. 3, 1985), 764 F. 2d 188, certiorari denied (1985), 474 U.S. 950, a discharged city employee sought reinstatement and back pay claiming that his due process rights had been violated. The city argued that because it had followed the provisions of the collective bargaining agreement which had created the employee's property right, he had not been deprived of due process. In essence, it argued that the labor agreement defined the parameters of due process. The federal district court rejected this proposition as "specious." It stated:

"The majority members of the Supreme Court have agreed on the fundamental proposition that '[w]hile the State may define what is and what is not property, once having defined those rights the Constitution defines due process * * *.' *Arnett* v. *Kennedy* 416 U.S. 134, 185, 94 S. Ct. 1633, 1660, 40 L. Ed. 2d 15 (1974), (White, J., concurring in part and dissenting in part). See, also, *Perri* [v. *Aytch* (C.A. 3, 1983)], 724 F. 2d [362,] at 366; *Pedersen* v. *South Williamsport Area School District,* 677 F. 2d 312, 316 (3d Cir.), cert. denied, 459 U.S. 972, 103 S. Ct. 305, 74 L. Ed. 2d 285 (1982). Although the collective bargaining

agreement conferred a property interest in continued employment upon Smith, this Court must look to federal law, not the labor agreement, to define Smith's procedural due process rights." *Id.* at 947.

Similarly, in *Rogers* v. *Okin* (C.A. 1, 1984), 738 F. 2d 1, the court of appeals stated:

"The determination that state procedural rules create liberty interests under the due process clause does not answer the question of what process is due under the Constitution. Procedural minima prescribed by the due process clause are not necessarily coextensive with procedures prescribed by state law. Where state procedures fall below the minimum requirements of the due process clause, those procedures are invalid. See *Vitek* v. *Jones,* 445 U.S. at 491, 100 S. Ct. at 1263; *Wolff* v. *McDonnell,* 418 U.S. at 557, 94 S. Ct. at 2975. Conversely, if state procedures rise above the floor set by the due process clause, a state could fail to follow its own procedures yet still provide sufficient process to survive constitutional scrutiny. *E.g., Hewitt* v. *Helms,* 103 S. Ct. at 884 (Stevens, J., dissenting) ('today's majority opinion locates the due process floor at a level below existing [state] procedures')." *Id.* at 7-8. Accord *Brandon* v. *Dist. of Columbia Bd. of Parole* (C.A.D.C. 1987), 823 F. 2d 644, 649; *Harris* v. *Birmingham Bd. of Edn.* (C.A. 11, 1987), 817 F. 2d 1525, 1527-1528; *Bates* v. *Sponberg* (C.A. 6, 1976), 547 F. 2d 325, 329-331.

These cases make it clear that violations of due process are judged not by state law standards but by federal standards. The board's failure to follow the provisions of the collective bargaining agreement did not, in and of itself, violate Manning's constitutional due process rights, and therefore, did not give rise to an action under Section 1983, Title 42, U.S.

Code. The question we must decide, therefore, is whether Manning was deprived of due process under federal constitutional standards.

In *Loudermill, supra,* the United States Supreme Court discussed Fourteenth Amendment due process requirements in connection with public employee disciplinary proceedings in Ohio. It noted that under R.C. 124.34 certain public employees enjoy a property right in continued public employment which is entitled to due process protection. It concluded that the post-termination administrative procedures provided by Ohio law coupled with a pretermination hearing satisfy the requirements of the Due Process Clause.

The post-termination procedures under the collective bargaining agreement provide equal or better safeguards against wrongful termination than do the provisions of R.C. 124.34. Accordingly, our focus is the adequacy of the pretermination hearing. The pretermination hearing, "though necessary, need not be elaborate." The essential requirements of due process are notice and an opportunity to respond. Therefore, "[t]he tenured public employee is entitled to oral or written notice of charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Id.* at 546. See, also, *Jones* v. *Walton* (Nov. 23, 1987), Butler App. No. CA87-09-117, unreported, at 3-4.

We find that the procedures followed by the board fulfilled these requirements. Manning received notice, both written and oral, of the charges against him and the substance of the sewer district's evidence. The written notice of pretermination hearing clearly informed him that it had been recommended that he be discharged. He and his union representative were present at the June 5 pretermination hearing, where he was able to confront

his accusers and respond to their allegations. He received far more than a mere "opportunity to present his side of the story."

Manning contends that the board's decision was made on mere "suspicions," not concrete evidence and that, therefore, the hearing did not comport with due process requirements. However, the pretermination hearing "need not definitely resolve the propriety of the discharge. It should be an initial check against mistaken decisions * * *, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action.* * *" *Loudermill, supra,* at 545-546. There was sufficient evidence presented at the hearing to give the board reasonable grounds to believe that Manning had altered his time card. Moreover, Manning's own version of facts, that he had performed personal work on company time, was sufficient to support termination. Manning had a right to a full post-termination hearing under the terms of the collective bargaining agreement which was the proper forum for definitely resolving the propriety of the discharge. However, he failed to avail himself of this right.

Manning also implies that because there was not a second hearing at the time of his discharge, he was denied due process of law. Although Potts recommended that he receive a three-day suspension, the board rejected that recommendation and decided discharge was appropriate. This decision was within their discretion and was supported by the evidence at the hearing. Manning was given notice that discharge was possible prior to the hearing and was able to present his "defense" on that basis. Moreover, the decision to terminate his employment was clearly made immediately following the post-termination hearing, although execution of that sanction was postponed.

The board did not rely upon any other evidence, specifically Boerner's letter, in making the final decision' to terminate Manning's employment. Manning's July 10, 1986 meeting with Potts was simply the means by which the board informed Manning that its decision would be implemented. No new hearing was required at that time. To require a decisionmaker to hold additional pretermination hearings whenever additional cumulative evidence comes to its attention would present a heavy administrative burden which the Constitution does not require, especially when there are adequate post-termination remedies available. Manning received adequate notice and an opportunity to respond prior to his discharge. Therefore, he was not deprived of due process of law and his sole assignment of error is overruled.

The assignment of error properly before this court having been ruled upon as heretofore set forth, it is the order of this court that the judgment or final order herein appealed from be, and the same hereby is, affirmed.

*Judgment affirmed.*

JONES, P.J., HENDRICKSON and KOEHLER, JJ., concur.