EMANUEL, Appellee,

v.

COLUMBUS RECREATION AND PARKS DEPARTMENT et al., Appellants.

[Cite as *Emanuel v. Columbus Recreation & Parks Dept.* (1996), 115 Ohio App.3d 592.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 95APE12–1593.

Decided Nov. 14, 1996.

*Cloppert, Portman, Sauter, Latanick & Foley, Robert W. Sauter* and *Brenda J. Redmond,* for appellee.

*Ronald J. O'Brien,* City Attorney, and *Michael C. Matuska,* Assistant City Attorney, for appellants.

PETREE, Presiding Judge.

This matter is before this court upon the appeal of defendants, city of Columbus ("city"), James Barney, Wayne Roberts, and Susie Wells, as Director, Deputy Director, and Recreational Administrator, respectively, of the Columbus Recreation and Parks Department ("department"), from a judgment of the Franklin County Court of Common Pleas rendered in favor of plaintiff, Edward O. Emanuel, in a civil rights suit under Section 1983, Title 42, U.S.Code. On appeal, defendants raise the following three assignments of error:

"[I.] The lower court erred in holding that plaintiff-appellee was entitled to a pre-termination hearing as a classified civil service employee pursuant to Ohio Revised Code Section 124.34.

"[II.] The lower court erred in holding that defendant-appellant Director Barney, as a government official, [is] individually liable for violating a clearly established, constitutional, and statutory right regarding continued employment since it is against the manifest weight of the evidence.

"[III.] The lower court erred in holding that front pay was appropriate based upon the circumstances in this case."

In addition, subsequent to the parties' submission of briefs but prior to oral argument, this court, pursuant to its authority under App.R. 12, *sua sponte* ordered additional briefing on the following issue:

"The lower court erred in holding that plaintiff-appellee was entitled to damages of both back pay and front pay."

Plaintiff was employed by the Columbus Recreation and Parks Department for approximately twenty–four years, eventually reaching the level of recreation supervisor. Plaintiff was a classified civil servant pursuant to R.C. 124.11. Prior to April 1990, plaintiff was convicted of operating a motor vehicle while intoxicated. He was sentenced to a jail term at the Franklin County workhouse to begin

on April 16, 1990. According to plaintiff, before beginning his incarceration, he notified one of his superiors, Susie Wells, of his conviction and sentence and informed her that he would be involved in a work-release program whereby he could continue to work while serving his sentence. However, upon entering the workhouse, plaintiff was disqualified from the work-release program because he failed an initial drug test.

Upon learning that he would be unable to report to work during his incarceration, plaintiff telephoned his sister-in-law and asked her to contact Wells and inform her that he would be unable to report for work due to his confinement. According to plaintiff, he had his sister-in-law call for him because he was unable to contact his employers directly, as the city has a policy prohibiting its employees from accepting collect telephone calls. On April 17, 1990, plaintiff's sister-in-law telephoned Wells and advised her that plaintiff was in jail and would be unable to report to work.

Plaintiff remained incarcerated and did not report for work on April 17, 18, 19, 20, and 22, 1990. Neither plaintiff nor any designee of plaintiff called the department on April 18, 19, 20, or 22, 1990 to report that he was incarcerated and unable to report to work. On April 22, 1990, plaintiff contacted his daughter and requested that she call the department on his behalf and explain that he was still unable to return to work. Plaintiff's daughter called Wells on April 23, 1990 and informed her that plaintiff was still incarcerated and unable to return to work. Plaintiff remained incarcerated and did not report to work on April 24 or 25, 1990. Neither plaintiff nor any designee of plaintiff called the department on April 24 or 25, 1990.

Since plaintiff did not report to work from April 17 until April 25, 1990, defendants regarded plaintiff absent without leave. On April 25, 1990, James Barney terminated plaintiff's employment with the city pursuant to Columbus Civil Service Commission Rule XV(E)(2), which provides that any employee absent without leave for five consecutive days may be deemed to have voluntarily resigned his or her position with the city. On that same day, Barney signed a letter to plaintiff which stated that he was being terminated from his position for failure to fulfill his duties as recreation supervisor. Attached to the letter was a "P53 Termination/Layoff" form stating that plaintiff had been terminated effective April 25, 1990 pursuant to Columbus Civil Service Commission Rule XV(E)(2), having been absent without leave on April 17, 18, 19, 20, 22, 23, and 24, 1990. Wayne Roberts delivered the letter to plaintiff at the workhouse and read it to him. Neither the letter nor the P53 attachment stated that plaintiff had a right to a hearing before his termination, or that he had a right to appeal his termination. Furthermore, Roberts made no reference in his conversation with

plaintiff to either a pre- or post-termination hearing. It is undisputed that plaintiff was never afforded a pretermination hearing.

During their conversation, Roberts informed plaintiff that he would be given another position with the city upon his release from jail so that plaintiff could continue to participate in the Public Employees Retirement System ("PERS"). According to Roberts, he did not tell plaintiff that the new position would be comparable in pay or responsibility to his former position as recreation supervisor. On June 11, 1990, plaintiff was offered a position as a laborer with the Department of Public Utilities and assigned groundskeeping duties. Upon learning that the position paid only $6.50 an hour and involved manual labor, plaintiff did not report for work and, after being absent without leave for five consecutive days, was terminated from this position effective June 15, 1990. After his termination, plaintiff was unable to secure other employment. When his unemployment compensation benefits ran out, plaintiff withdrew all of his PERS funds.

On July 28, 1992, plaintiff filed a complaint against the city, Barney, Roberts, and Wells in both their official and individual capacities, alleging that the termination violated his civil rights secured by Section 1983, Title 42, U.S.Code and the Due Process Clause of the Fourteenth Amendment to the United States Constitution. He sought reinstatement, back pay, punitive damages, attorney fees, and court costs.

Pursuant to Loc.R. 13 of the Franklin County Common Pleas Court, General Division, the case was referred to an arbitration panel, which found in favor of defendants. Plaintiff appealed that decision, and a nonjury trial was held before a referee of the Franklin County Court of Common Pleas. The proceeding was bifurcated, with the issue of liability to be first determined, and damages and attorney fees to be later determined if liability were found.

In her September 29, 1994 report, the referee recommended that the court enter judgment in favor of plaintiff. More specifically, the referee found the city had violated plaintiff's due process rights by terminating him without an explanation of the evidence against him and by failing to conduct a pretermination hearing or allow a post-termination appeal. However, the referee found no personal liability on the part of defendants Barney, Roberts, or Wells.

As to damages, the referee's report recommended payment of back wages from April 25, 1990 to June 11, 1990, at plaintiff's regular wage rate of $15.06 per hour and back wages from June 11, 1990 to October 25, 1991 (plaintiff's retirement date, as determined by the referee) at the reduced wage rate of $8.56 per hour. (This reduced rate was pursuant to the referee's finding that plaintiff failed to mitigate his damages by accepting the $6.50 per hour laborer position offered by the city.)

Both parties filed objections. Plaintiff took issue with the referee's calculation of his retirement date, the determination that he was required to accept the laborer position in mitigation of his damages, and the determination that Barney was not individually liable for the violation of plaintiff's due process rights. In contrast, the city argued that plaintiff's due process rights were not violated, as plaintiff had voluntarily resigned his position. The city further argued that if back wages were awarded, the award should be modified to include back wages only from April 25 to June 11, 1990, due to plaintiff's failure to accept the laborer position offered by the city.

By decision entered February 9, 1995, the trial court determined that plaintiff's due process rights had been violated and that Barney should be held personally liable for the violation. In addition, the trial court determined that plaintiff's retirement date had been incorrectly calculated by the referee and that plaintiff was not required to accept the laborer position in mitigation of his damages. Accordingly, the trial court ordered a hearing on the issue of plaintiff's damages and the reasonableness of plaintiff's request for attorney fees. The issue of attorney fees was eventually settled without a hearing.

A damages hearing was held on June 30, 1995 to determine the beginning and ending dates for the calculation of plaintiff's damages. The magistrate recommended that plaintiff's damages be measured from April 25, 1990 to December 26, 1996 (plaintiff's retirement date as recalculated by the magistrate). On November 8, 1995, the trial court adopted the magistrate's recommendation. Defendants timely appeal.

■ By the first assignment of error, defendants argue that the trial court erred in holding that plaintiff was deprived of his right to due process of law because he was not afforded a pretermination hearing.

■ Since classified state civil servants can be removed only for cause according to R.C. 124.34, they possess a property interest in continued employment, a right that is protected by the Due Process Clause of the Fourteenth Amendment. *Cleveland Bd. of Edn. v. Loudermill* (1985), 470 U.S. 532, 538–539, 105 S.Ct. 1487, 1491–1492, 84 L.Ed.2d 494, 501–502; *Seltzer v. Cuyahoga Cty. Dept. of Human Serv.* (1987), 38 Ohio App.3d 121, 122, 528 N.E.2d 573, 575–576. In order to comply with due process, an appointing authority is required to afford an employee certain protections before terminating employment, including oral or written notice of the charges against the employee, an explanation of the employer's evidence, and an opportunity to be heard before being terminated. *Loudermill* at 546–548, 105 S.Ct. at 1495–1497, 84 L.Ed.2d at 507–508; *Seltzer* at 123, 528 N.E.2d at 576. See, also, *Csanyi v. Cuyahoga Cty. Commrs.* (1986), 29 Ohio App.3d 37, 29 OBR 38, 502 N.E.2d 700; *Valan v. Cuyahoga Cty. Sheriff* (1985), 26 Ohio App.3d 166, 26 OBR 385, 499 N.E.2d 377; *Manning v. Clermont*

*Cty. Bd. of Commrs.* (1989), 55 Ohio App.3d 177, 563 N.E.2d 372; *Deoma v. Shaker Hts.* (1990), 68 Ohio App.3d 72, 587 N.E.2d 425.

Plaintiff argues that as a classified civil service employee he was entitled to the above due process protections before being terminated. More specifically, plaintiff contends that, although he received written notice of the charges against him, the notice was given at the time of his termination. Furthermore, plaintiff asserts he did not receive an explanation of the evidence against him and was not afforded an opportunity to be heard at a pretermination hearing in contravention of his due process rights.

In contrast, defendants argue that plaintiff was not entitled to a pretermination hearing or post-termination appeal pursuant to R.C. 124.34 because his absence from work due to his incarceration constituted a voluntary resignation from employment and not a discharge for cause. We disagree.

Rule XV(E)(2) of the Columbus Civil Service Commission Rules provides:

"1. Absence from duty without prior approval for any length of time may be grounds for disciplinary action.

"2. Absence without leave for five consecutive work days may be deemed a voluntary resignation and abandonment of the position. The department shall report such absence promptly to the Commission.

"3. This Rule does not require an appointing authority to initiate disciplinary action against the employee who is absent without leave for five consecutive work days, if it is determined that such action is unwarranted, nor does such Rule preclude disciplinary action against an employee who is absent without leave for less than five consecutive work days if such absence is of sufficient seriousness."

As Rule XV(E)(2) clearly states, the decision to consider plaintiff's absence a voluntary resignation was within Barney's discretion. However, not every absence without leave for five consecutive days or more constitutes a voluntary resignation under Rule XV(E)(2). In *Decree v. Columbus* (Aug. 17, 1989), Franklin App. No. 89AP–247, unreported, 1989 WL 95353, this court considered what constitutes a "voluntary resignation" under the same civil service rule at issue herein. In that case, a recreation supervisor for the Columbus Department of Parks and Recreation sustained a back injury at work, and, as a result, was medically required to take extended periods of leave. Although the employee informed the department of his situation, he did not call in to work every day to report that he would not be coming to work. The employee was not disciplined for these absences, nor was he informed that he was following improper procedures.

After the employee took an extended period of leave on the advice of his doctor, the department determined that, due to his absences, the employee had voluntarily resigned his employment pursuant to Rule XV(E)(2). The trial court

determined that the employee's absences did not constitute a voluntary resignation, contrary to what the rule provided. This court agreed, stating:

"The key to deciding the outcome of this case lies in what is meant by a 'voluntary resignation' as defined in Rule XV(E)(2).

"The trial court concluded, and we agree, that it was not the intention of appellee [Decree] to abandon his position. The appellants' action amounted to a constructive discharge and cannot be considered voluntary. As the trial court stated, ' * * * [r]egardless of nomenclature, the decision by the City was one to terminate employment. * * *' It was an affirmative act on the part of appellants, and not appellee, which rendered the employee jobless, and as such, it was not the voluntary act of appellee.

" * * *

"In the present case, appellee allegedly followed procedure to prevent application of a constructive resignation. He was not informed that his procedure was incorrect nor was he given a clear option. All of his actions were inconsistent with a voluntary abandonment. He followed what he believed to be appropriate procedures in calling in prior to his discharge and again calling in on April 5, 1988, to inform the appellants Recreation and Parks Department, of his continued absence. These actions are not consistent with the total lack of response exhibited by the employees in appellants' cited cases and do not amount to a voluntary resignation." Id. at 5–7.

Defendants contend that Decree is distinguishable from the instant case in that the employee's absence in Decree was due to no fault of his own, while plaintiff's absence was the result of his own actions. However, in holding that the employee did not voluntarily resign, this court's analysis in Decree did not focus on the reasons for the employee's absence from work; rather, this court found dispositive the employee's lack of intent to abandon his employment.

Applying this reasoning to the instant case, this court finds plaintiff's actions to be inconsistent with a voluntary abandonment of his position. Plaintiff testified that he informed his supervisors of his conviction and sentence in advance. Although plaintiff was ultimately unable to participate in the work-release program, undisputed testimony indicates that plaintiff's family members informed his supervisors on two separate occasions that plaintiff was incarcerated and was unable to work. Plaintiff followed what he believed to be appropriate procedures in notifying his supervisor of his situation and his inability to return to work. As in Decree, plaintiff was not informed that the procedure he followed was incorrect, nor was he given any other option. Such actions are inconsistent with an intent to abandon his position. Thus, we conclude that plaintiff's actions did not amount to a voluntary resignation; rather, plaintiff was discharged from his position.

Having so concluded, we hold that the trial court did not err in finding that plaintiff's due process rights were violated by defendants' failure to provide plaintiff a pretermination hearing before discharging him. *Loudermill, supra.* Accordingly, the first assignment of error is overruled.

■ Having determined that plaintiff was deprived of his constitutional right to due process, we must next determine what measure of damages plaintiff is entitled to receive as a result of the deprivation. Accordingly, as defendants' third assignment of error and this court's *sua sponte* assignment of error raise the issue of damages and are therefore interrelated, we will address them together.

The trial court held that plaintiff had a property interest in his position with the city and that the manner of his termination violated his constitutional right not to be deprived of property without due process of law. As previously determined in the first assignment of error, this court agrees with that determination. However, the trial court then awarded plaintiff back pay and front pay based solely upon the due process violation without a finding as to whether the discharge was justified.

In *Carey v. Piphus* (1978), 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252, the United States Supreme Court held that an individual's procedural due process rights are absolute, that is, such rights can be violated regardless of the merit of the individual's underlying substantive assertions. *Id.* at 266, 98 S.Ct. at 1054, 55 L.Ed.2d at 266. The court also recognized that a plaintiff is entitled to "nominal damages without proof of actual injury" when a plaintiff's procedural due process rights have been violated. *Id.* at 266, 98 S.Ct. at 1054, 55 L.Ed.2d at 267. However, the court noted that "[p]rocedural due process rules are meant to protect persons not from the deprivation [of property], but from the mistaken or unjustified deprivation of * * * property." *Id.* at 259, 98 S.Ct. at 1050, 55 L.Ed.2d at 262. Thus, if it can be proven that the plaintiff " 'would have been [fired] even if a proper hearing had been held,' * * * [the plaintiff] will not be entitled to recover damages to compensate * * * for injuries caused by the [firing]." *Id.* at 260, 98 S.Ct. at 1050, 55 L.Ed.2d at 262. The court noted that to hold otherwise would allow "a windfall, rather than compensation." *Id.*

Relying on the *Carey* rationale, the Eighth Circuit Court of Appeals held that compensatory damages such as back wages may not be awarded to a public employee for a due process violation unless there is a finding that the discharge would not have occurred if the employee's procedural due process rights had been observed. *Brewer v. Chauvin* (C.A.8, 1991), 938 F.2d 860, 864. Given that no such finding had been made, the court remanded the case to the district court for an evidentiary hearing on that issue.

Following the lead of *Brewer*, the United States District Court for the Eastern District of Tennessee held that, on the basis of cross-motions for summary judgment, it was not in a position to make a determination as to whether a public employee deprived of procedural due process was entitled to reinstatement and back pay. *Cotton v. Reynolds* (D.Tenn.1992), 812 F.Supp. 121. The *Cotton* court held that a hearing was necessary to determine, among other things, the issue of whether the employee would have been terminated even if an appropriate pretermination hearing had been held. The court also noted that the employer defendants would be required to carry this burden by a preponderance of the evidence. See, also, *Durante v. Ohio Civ. Rights Comm.* (May 19, 1987), Franklin App. No. 86AP–591, unreported, 1987 WL 11611.

Many courts have held that when there is a *Carey*–type finding that an employee would have been fired even if a full and proper due process dismissal hearing had been afforded, reinstatement and/or back pay are not proper remedies, and an award of compensatory damages is not justified. In such cases, an employee is entitled only to those damages directly traceable to the employer's failure to observe due process, *i.e.*, nominal damages. *Parks v. Goff* (1980), 483 F.Supp. 502; *Rogers v. Kelly* (C.A.8, 1989), 866 F.2d 997; *Patkus v. Sangamon-Cass Consortium* (C.A.7, 1985), 769 F.2d 1251; *Piacitelli v. S. Utah State College* (Utah 1981), 636 P.2d 1063; *Valan, supra*, 26 Ohio App.3d at 172, 26 OBR at 391, 499 N.E.2d at 383. The rationale behind these cases is that the wrong suffered by the employee was not the dismissal; rather, the wrong suffered was the deprivation of due process. *Piacitelli, supra.*

In the instant case, the trial court made no finding as to whether plaintiff would have been terminated had he been afforded a pretermination hearing consistent with the requirements of the Due Process Clause. We therefore find that the trial court's award of back and front pay, which was based solely on the violation of plaintiff's right to procedural due process, cannot be sustained in the absence of such a finding. Accordingly, the case must be remanded to the trial court for a determination whether plaintiff would have been terminated had an appropriate pretermination hearing been held. If on remand the court finds that plaintiff would have been terminated from his position even if procedural due process had been observed, then he is not entitled to an award of back or front pay; however, he may be entitled to an award of nominal damages for the deprivation of his due process rights. *Parks, Rogers, Patkus, Piacitelli,* and *Valan, supra.* On the other hand, if the court finds that plaintiff would not have been terminated had he been afforded a proper pretermination hearing, the court should make a determination as to an award of back and/or front pay based on the record before the court at that time. Accordingly, the third assignment of error is sustained.

■ By the second assignment of error, defendants contend that the trial court erred in holding Barney individually liable for the violation of plaintiff's due process rights. Defendants argue that Barney, as a government official, is protected from civil liability by the doctrine of qualified immunity.

The United States Supreme Court has held that "government officials performing discretionary functions are generally shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of a which a reasonable person would have known." *Harlow v. Fitzgerald* (1982), 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396, 410, Qualified immunity is based on the principle that "an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful." *Id.*

In *Anderson v. Creighton* (1987), 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523, the United States Supreme Court established a two-part analysis to assess a claim of qualified immunity. The court first held that whether a public official is protected from liability depends on whether there were clearly established legal rules at the time the action was taken and the objective legal reasonableness of the action. If the law is clearly established, the court must then consider whether, in the specific circumstances of the alleged action, a "reasonable official" would have believed that the challenged action was lawful in light of the information possessed by the official. *Id.* at 641, 107 S.Ct. at 3039–3040, 97 L.Ed.2d at 531–532; *Kittrells v. Perry* (Sept. 5, 1996), Cuyahoga App. No. 69445, unreported, 1996 WL 502153.

Although the United States Supreme Court has not yet defined "clearly established," the phrase has been interpreted to mean a question "decided either by the highest state court in the state where the case arose, by a United States Court of Appeals or by the Supreme Court." *Moore v. Hayman* (1990), 67 Ohio App.3d 184, 188, 586 N.E.2d 233, 236, citing *Robinson v. Bibb* (C.A.6, 1988), 840 F.2d 349, 351.

■ Moreover, "[t]he right in question, however, cannot be simply a generalized right, like the right to due process." *Marsh v. Arn* (C.A.6, 1991), 937 F.2d 1056, 1067, citing *Danese v. Asman* (C.A.6, 1989), 875 F.2d 1239, 1242. Instead, the right allegedly violated must have been clearly established in a more particularized sense. *Anderson, supra,* 483 U.S. at 640, 107 S.Ct. at 3039, 97 L.Ed.2d at 530–531. " 'The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.' * * * [In other words,] while official action is not necessarily protected by qualified immunity unless and until the very action in question has been held unlawful, * * * the unlawfulness must be apparent in light of pre-existing law." *Marsh, supra.*

In holding Barney personally liable for the violation of plaintiff's due process right to a pretermination hearing, the trial court relied on this court's decision in the *Decree* case. More specifically, the trial court reasoned that since Barney was a named defendant in that case, which was decided only eight months before plaintiff's termination, he should have known that discharging plaintiff without affording him a pretermination hearing violated his constitutional right to due process of law. We disagree.

*Decree* is not a due process case. The employee in *Decree* did not allege that he was discharged from his employment without a pretermination hearing in violation of his due process rights; rather, the key issue in *Decree* was whether the employee was constructively discharged or voluntarily resigned his position for purposes of Columbus Civil Service Commission Rule XV(E)(2). Although we have found *Decree* applicable to the instant case for purposes of our analysis in determining that plaintiff did not voluntarily resign his position with the city, we cannot find that *Decree* "clearly established" that a public employee is entitled to a pretermination hearing before being discharged when the appointing authority considers that the employee's absence without leave for five consecutive days constitutes a voluntary resignation under Columbus Civil Service Commission Rule XV(E)(2). Thus, the trial court erred in finding that Barney's participation as a defendant in the *Decree* case should have made him aware that discharging plaintiff without a pretermination hearing violated his due process rights. Under the specific circumstances relevant to Barney's action in discharging plaintiff, it was not unreasonable for him to have believed that his action was lawful in light of the information he possessed at that time. Accordingly, the second assignment of error is sustained.

For the foregoing reasons, the first assignment of error is overruled, and the second and third assignments of error are sustained. The judgment of the Franklin County Court of Common Pleas is reversed, and the case is remanded for further proceedings in accordance with law and consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

LAZARUS, J., concurs.

TYACK, J., concurs in part and dissents in part.

TYACK, Judge, concurring in part and dissenting in part.

I agree with the majority's handling of the first assignment of error. However, I disagree with its resolution of the second and third assignment of error. To that extent, I respectfully dissent.

As to the issue of damages generally, I believe that, since the trial court found significant damages to have been sustained due to the deprivation of employment without due process of law, the trial court must necessarily have considered the very issues to be reviewed upon remand. I, therefore, see no reason for additional review of these issues on remand.

As to Mr. Barney's personal liability, I believe the trial court's verdict was adequately supported by the evidence. Even without the benefit of *Decree v. Columbus* (Aug. 17, 1989), Franklin App. No. 89AP–247, unreported, 1989 WL 95353, Mr. Barney should have known that a person with over two years of service as a classified civil servant has a property interest in continued employment which cannot be taken away without some semblance of due process of law. Everyone involved knew where Mr. Emanuel was and knew that he wanted to continue his employment with the city of Columbus. Everyone involved knew that Mr. Emanuel was not abandoning his employment. The fiction created by Rule XV(E) that a person who is incapable of reporting for work can be deemed to have abandoned his or her employment and then can have his or her job taken away with no recourse outside of the court system is a fiction with due process problems which all involved should have realized, including Mr. Barney.

Under the circumstances, I believe both the evidence and the pertinent law support the trial court's verdict. I would affirm that verdict. To the extent this court does not, I respectfully dissent.