PETRILLA, Appellant,

v.

OHIO STATE BOARD OF PHARMACY, Appellee.

[Cite as *Petrilla v. Ohio State Bd. of Pharmacy*, 153 Ohio App.3d 428, 2003-Ohio-3276.]

Court of Appeals of Ohio,
Seventh District, Mahoning County.

No. 02 CA 151.

Decided June 18, 2003.

Gregg Rossi, for appellant.

Jim Petro, Attorney General, and Sally Ann Steuk, Assistant Attorney General, for appellee.

VUKOVICH, Judge.

{¶ 1} Plaintiff-appellant, Richard Petrilla, appeals the decision of the Mahoning County Common Pleas Court, which affirmed the decision of the Ohio State Board of Pharmacy concerning a two-year license suspension and which decreased the fine imposed from $42,500 to $25,000. Appellant claims that the board's decision is not supported by reliable, probative, and substantial evidence. He also claims that the two-year suspension is unreasonably excessive and that the board had no authority to impose a fine when it had it already imposed a suspension. For the following reasons, the decision of the trial court is affirmed.

## STATEMENT OF FACTS

{¶ 2} Appellant has been a pharmacist since 1969. He owns Dick's Pharmacy on Garland Avenue in Youngstown, Ohio. The board began investigating appellant in 1998 after United Health Care sent a complaint letter. Apparently, UHC noticed an inordinate number of 14–day prescriptions coming from appellant's pharmacy for the same patients. This fact caused suspicion because UHC patients on maintenance drugs were permitted to obtain only the first 14 days' supply from a local pharmacy, and the remainder of the prescription had to be filled by mail order. On August 17, 2000, appellant pled no contest to ten felonies, five counts of illegal processing of drug documents in violation of R.C. 2925.23(B)(1), and five counts of distributing a dangerous drug in violation of R.C. 4729.51(A) and (C)(2).

{¶ 3} On October 4, 2000, the board issued a summary suspension of appellant's license and a notice of opportunity for hearing. Paragraph two of the suspension order alleged that appellant's conduct constituted a felony or gross immorality within the meaning of R.C. 4729.16(A). Paragraph three alleged that from November 29, 1997, through March 23, 1999, appellant submitted false prescription claims. This paragraph also stated that for the five randomly selected UHC patients out of 180, appellant received almost $38,000 for these prescriptions. This conduct was described as being in violation of R.C. 2913.02 and 4729.16(A). The notice then had two paragraphs for each of the five randomly selected patients, charging violations of R.C. 2925.23(B)(1) for intentionally making, uttering, or selling false or forged prescriptions and violations of R.C. 4729.51(C) for selling, at retail, a dangerous drug when not in accordance with Chapters 3719, 4729, 4731; these are the two categories of charges to which appellant pleaded no contest. Specifically, the number of violations per patient was calculated as follows: patient one, 12 times; patient two, 253 times; patient three, 12 times; patient four, 35 times; and patient five, 244 times.

{¶ 4} A similar notice was also served on the pharmacy. The pharmacy was eventually fined $25,000. This decision was upheld by the Franklin County Common Pleas Court and the Tenth Appellate District. See *Ohio State Bd. of Pharmacy v. Dick's Pharmacy,* 150 Ohio App.3d 343, 2002-Ohio-6500, 780 N.E.2d 1075.

{¶ 5} A consolidated hearing was held before the full board on March 6, 2001. Both parties submitted various exhibits that were admitted into evidence. Agent George Pavlich and Compliance Specialist/Pharmacist Joann Predina testified for the state. Appellant also testified. He basically admitted wrongdoing but seemed to be seeking leniency and forgiveness. On April 4, 2001, the board released its decision. The findings of fact matched the allegations and paragraph numbers in the summary suspension order. The conclusions of law stated: (1)

paragraphs 2 through 13 constitute being guilty of a felony in violation of R.C. 4729.16(A)(1); (2) paragraphs 2 through 13 constitute being guilty of dishonesty and unprofessional conduct in the practice of pharmacy in violation of R.C. 4729.16(A)(2); and (3) paragraphs 4 through 13 constitute being guilty of willfully violating, conspiring to violate, attempting to violate, or aiding and abetting the violation of Chapters 2925 and 4729 in violation of R.C. 4729.16(A)(5). Based on the first and second conclusions of law, the board imposed a two-year suspension of appellant's pharmacist license. Based on the third conclusion of law, the board imposed a monetary penalty of $42,500.

{¶ 6} Appellant filed a timely complaint/administrative appeal in the trial court. On August 13, 2002, the court opined that although it felt that the two-year suspension and the maximum fine together were too harsh, the law prohibited the court from modifying the time period since it was supported by reliable, probative, and substantial evidence. As for the fine, the court decreased the amount from $42,500 to $25,000, based upon what appeared to be a concession in the state's brief and because the fine is to be consistent with the fine available for the criminal offenses, which the court found to be ten fifth-degree felonies, each with a maximum fine of $2,500. The court also held that the board was permitted to impose both a suspension and a fine because each penalty was based upon different statutory violations. Appellant filed a timely notice of appeal in this court.

## GENERAL STANDARD OF REVIEW

{¶ 7} The trial court may affirm the order of the agency if it finds, upon consideration of the entire record and any additional evidence the court admitted, that the order is supported by reliable, probative, and substantial evidence and is in accordance with law. R.C. 119.12. In the absence of such a finding, it may reverse, vacate, or modify the order or make such other ruling as is supported by reliable, probative, and substantial evidence and is in accordance with law. R.C. 119.12.

{¶ 8} In this context, reliable evidence is defined as dependable evidence or that which can be confidently trusted. *Our Place, Inc. v. Ohio Liquor Control Comm.* (1992), 63 Ohio St.3d 570, 571, 589 N.E.2d 1303. In order to be reliable, there must be a reasonable probability that the evidence is true. Id. Probative evidence is that which is relevant or tends to prove the issue in question. Id. Substantial evidence is evidence with some weight, importance, and value. Id.

{¶ 9} The review conducted by the appellate court is even more limited than that of the trial court. *Pons v. Ohio State Med. Bd.* (1993), 66 Ohio St.3d

619, 621, 614 N.E.2d 748. The appellate court is to determine only whether the trial court has abused its discretion. Id. Absent an abuse of discretion, we may not substitute our judgment for that of the Pharmacy Board or the trial court. Id. In conducting a review, an agency's findings of fact are presumed correct and are given due deference. *VFW Post 8586 v. Ohio Liquor Control Comm.* (1998), 83 Ohio St.3d 79, 81, 697 N.E.2d 655. The agency is best able to observe the demeanor of the witnesses and weigh their credibility. *Brown v. Bur. of Emp. Serv.* (1994), 70 Ohio St.3d 1, 2, 635 N.E.2d 1230; *Leon v. Ohio Bd. of Psych.* (1992), 63 Ohio St.3d 683, 688, 590 N.E.2d 1223.

## ASSIGNMENT OF ERROR NUMBER ONE

{¶ 10} Appellant sets forth three assignments of error, the first of which contends:

{¶ 11} "The trial court erred in affirming the board's order since the order of April 4, 2001 is not supported by substantial, reliable and credible evidence."

{¶ 12} Under this assignment, appellant makes various arguments. He contends that the state should have placed the physicians' records into evidence to prove that the prescriptions were unauthorized, arguing that the physicians' affidavits submitted as exhibits were unreliable hearsay evidence. The Rules of Evidence are promulgated under Section 5(B), Article 4 of Ohio's Constitution; this constitutional authority extends only to rules that govern the practice and procedure *in the courts* of the state. See, also, Evid.R. 101(A). An administrative agency is not a court. As such, administrative agencies are not bound by the Rules of Evidence. *Orange City School Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision* (1996), 74 Ohio St.3d 415, 417, 659 N.E.2d 1223 (upholding the admission of an appraisal that relied on data collected by one who did not testify and that violated Evid.R. 703 concerning expert testimony). The agency has discretion in admitting evidence, weighing it, and granting credibility to testimony. Id. at 416, 659 N.E.2d 1223. The Rules of Evidence may guide an agency in conducting a hearing, but they are not a mandate. Id. at 417, 659 N.E.2d 1223. Regardless, appellant failed to object to the admission of this evidence at the hearing. For the above reasons, we find unpersuasive appellant's challenge to the quality of this evidence before the board.

{¶ 13} Appellant also alleges that it is just as likely that the physicians' staff forgot to document every telephone prescription as it is that he created prescriptions without a physician's order. He claims that the board disregarded his exhibit C where one physician's staff members vouched that they phoned in prescriptions for patient three "on occasion" during the period of August 1998 through January 2000. The review period for patient three was August 1998

until February 1999. It appears that the board could have reasonably decided that the staff was remembering telephone prescriptions for the period from February 1999 through January 2000, which was after the review and after appellant changed his procedures. Additionally, the physician's records did not establish telephone prescriptions for this patient *on the dates listed* in appellant's records. Moreover, appellant merely submitted this exhibit as part of a packet of exhibits. He did not specifically review its contents at the hearing as the state did with its exhibits.

{¶ 14} We also note that in regard to this patient and others, many of the telephone prescriptions were drafted by employees of the pharmacy in violation of Ohio Adm.Code 4729-5-30(E), which requires the pharmacist himself to draft the telephone prescriptions. See, also, R.C. 4729.37. Furthermore, the telephone prescriptions failed to list the prescriber's agent, which is also required under the same administrative code section. Had this mandatory act been performed, the statement from the prescriber's agents may have been more compelling. As aforementioned, the board is permitted to assign varying levels of weight and credibility to the evidence. Accordingly, we do not conclude that the board erred in finding that the 12 14-day prescriptions issued to patient three were altered in violation of pharmacy laws.

{¶ 15} In line with the above argument, appellant complains that the board rubber-stamped the allegations set forth in the summary suspension order as the findings of fact appear to be copied from such order. Specifically, he argues that findings of fact numbers four and five, concerning patient number one, are unsupported because they rely on exhibits that outline three incorrect pieces of information concerning patient one's February 4, 1998 prescriptions. The agent's paperwork shows fewer refills than shown in the copies of the original, written prescriptions attached to that paperwork. For instance, the exhibit shows that no refills were written for Prilosec on February 4, 1998; however, a copy of the original, written prescription shows two refills. Then, the paperwork shows that no refills were written for Lipitor when the original prescription shows two refills. Finally, the paperwork shows no refills were written for Glucophage when the original prescription actually shows one refill. Appellant focuses on these mistakes because the specialist testified that she tried to give appellant the benefit of the doubt when she determined whether a patient was receiving more medicine than the doctor intended; thus, she would give credit for physician refills even though he wrote new prescriptions.

{¶ 16} Although appellant is correct when he states that the paperwork is incorrect as to those three prescriptions, this does not change the fact that he wrote new prescriptions with new prescription numbers when he was not permitted to do so. It also does not change the fact that he and his staff signed

prescriptions that were supposedly telephone prescriptions when no such conversation occurred regarding this patient at the times set forth in the exhibit. For instance, the Lipitor prescription written on February 4, 1998, was for 30 pills with two refills. The patient received 14 pills initially. Then, on February 21, 1998, appellant's records show a telephone prescription for 14 more Lipitor. This same prescription appears again on March 12, 1998, and March 24, 1998. Appellant presented his corrections to the exhibit at the hearing. Yet, the board could still rationally conclude that the telephone prescriptions never occurred and thus appellant's records were false. It is only logical for the board to ask itself why a physician would phone in a prescription that should not have run out yet. Lastly, appellant's own patient profile, generated from his computer records, states that the refills for these prescriptions were zero. Thus, it was probably his own work product that encouraged the mistake in the agent's paperwork. For all of these reasons, the board's findings were not lacking in probative, reliable, and credible evidence.

{¶ 17} Appellant states that all prescriptions were maintenance drugs for which there was a valid, original prescription, noting that he was not dispensing drugs of abuse at his own whim. He urges that he was not engaged in a scheme to defraud UHC but rather was merely providing his customers with better service. Yet, he then states that "the only thing" he did was reduce prescriptions into smaller quantities for insurance purposes.

{¶ 18} Appellant also admitted that he committed the acts because UHC patients constituted 15 to 20 percent of his business and he would probably be out of business if he did not help the patients avoid UHC's mail order plan. He even opened post office boxes for some patients in order to ensure that he would receive the reimbursement check, which he would then have the customer come in to sign. He testified that UHC claims that he wrongly earned $1.27 million as a result of his method of dispensing for UHC patients.

{¶ 19} In state's exhibit five and six, appellant acknowledges the violations he committed. At one point, he describes his new policy: "There is no authority to refill prescriptions or renew prescriptions with a new number on these general guidelines from the prescriber. The doctor will be contacted *each* time a prescription is to be renewed, without exception." Elsewhere, he concedes, "We understand violations have occurred in the past but we are now complying with all OSBP requirements for telephone Rx." In the taped interview with agents and on the stand, appellant admitted that he engaged in acts that were wrong. At the hearing, appellant asked for leniency, forgiveness, and understanding; he promised that he would not engage in this behavior again. He did not argue that he had been authorized to break the physicians' prescriptions into as many individual prescriptions as he desired.

{¶ 20} Pursuant to R.C. 4729.16(A)(1), the board can impose a fine or revoke or suspend the license of a pharmacist who is guilty of a felony or gross immorality. Under R.C. 4729.16(A)(2), the board may do likewise if it finds the pharmacist guilty of dishonesty or unprofessional conduct. Under R.C. 4729.16(A)(5), the board can impose one of these choices on a pharmacist who the board finds guilty of willfully violating, conspiring to violate, attempting to violate, or aiding and abetting the violation of any provision of Chapters 4729, 2925, or 3719 or sections 3715.52 to 3715.72. Here, the board found that appellant's transgressions fell under all of the above three divisions of R.C. 4729.16(A). Appellant was convicted of ten felonies in violation of Chapters 4729 and 2925 of the Revised Code. Further, his conduct could be characterized as dishonest and unprofessional. See R.C. 4729.16(C).

{¶ 21} For all of the foregoing reasons, the trial court did not abuse its discretion in determining that the decision of the board was supported by reliable, probative, and substantial evidence. See *Dick's Pharmacy,* 150 Ohio App.3d 343, 2002-Ohio-6500, 780 N.E.2d 1075, at ¶ 36–42 (upholding the board's decision that substantial, reliable, and probative evidence supported the findings made against appellant's pharmacy). This assignment of error is overruled.

## ASSIGNMENT OF ERROR NUMBER TWO

{¶ 22} Appellant's second assignment of error alleges:

{¶ 23} "The trial court erred in upholding the suspension since the suspension is the result of arbitrary and capricious actions of the board and is excessive, unreasonable and disproportionate."

{¶ 24} Appellant argues that we have the authority to review the reasonableness of sanctions imposed by the Board of Pharmacy. He claims that we can reduce or modify a suspension or fine. He then argues that the suspension is unreasonable, arbitrary, and capricious, especially since he was not given credit for the summary suspension and was fined $42,500 (reduced to $25,000). Appellant then points to sanctions in other Board of Pharmacy cases which were submitted to the trial court in the form of a graph. He then asks that we vacate the suspension or enter a fine no greater than $5,000.

{¶ 25} We have previously explained that the trial court is not empowered to modify a sanction where the court determines that the alleged violations were committed by the licensee but believes that the agency imposed too harsh of a penalty. *Sprankle v. Ohio Dept. of Ins.* (Sept. 10, 2001), 7th Dist. No. 00CA275, 2001 WL 1126636 (overturning a trial court decision that modified a license revocation and instead imposed a one-year suspension), citing *Henry's Café, Inc. v. Board of Liquor Control* (1959), 170 Ohio St. 233, 10 O.O.2d 177, 163 N.E.2d

678. In *Henry's Café*, the agency revoked the licensee's liquor permit for acts of gambling and disorderly conduct. The trial court agreed that gambling and disorderly conduct occurred but found extenuating circumstances existed and held that the 45–day license suspension would be more appropriate. In reviewing the case, the Supreme Court stated:

{¶ 26} "Unquestionably, the Court of Common Pleas may reverse, vacate, or modify an order of an agency unless it finds that the order is supported by reliable, probative and substantial evidence, but, where it makes such a finding, it can only affirm and cannot reverse, vacate or modify. * * * [T]here are no grays in such areas, but only blacks and whites. There are no violations under extenuating circumstances, but only facts which do or do not constitute violations. The Court of Common Pleas found that there were violations * * *. Patently desiring to modify the admittedly harsh order of the board, the Court of Common Pleas could find no such absence of evidence and, as an alternative route to the same end, found that 'the board abused its discretion' and modified its order on that ground." Id. at 236, 10 O.O.2d 177, 163 N.E.2d 678.

{¶ 27} The Supreme Court concluded by holding that the trial court had no jurisdiction to modify a penalty where the order finding violations was supported by reliable, probative, and substantial evidence. Id. at 236–237, 10 O.O.2d 177, 163 N.E.2d 678 (reversing the trial court's modification). This decision and our interpretation of it have been reaffirmed by the Supreme Court subsequent to the *Henry's Café* decision. *Dept. of Liquor Control v. Santucci* (1969), 17 Ohio St.2d 69, 70–72, 46 O.O.2d 402, 246 N.E.2d 549. See, also, *Diltz v. Crouch* (1962), 173 Ohio St. 367, 369–370, 19 O.O.2d 312, 182 N.E.2d 315 (holding that the court had no jurisdiction over the penalty imposed by the board). In *Santucci*, the court stated that the trial court's only role in an administrative appeal is to determine whether the rights of the permit holder have been protected and whether the violation has been sufficiently established. 17 Ohio St.2d at 72, 46 O.O.2d 402, 246 N.E.2d 549. The court expressly held that the trial court "lacked authority to modify the penalties imposed by the commission, which penalties are within the commission's power to assess." Id. at 70–71, 46 O.O.2d 402, 246 N.E.2d 549, citing *Henry's Café*, 170 Ohio St. 233, 10 O.O.2d 177, 163 N.E.2d 678. See, also, *State Med. Bd. of Ohio v. Murray* (1993), 66 Ohio St.3d 527, 538, 613 N.E.2d 636.

{¶ 28} In our denial of the application to reopen the *Sprankle* case, this court also reviewed the appellate cases that had applied *Henry's Café* to reverse cases that modified administrative penalties where those penalties had existed as options in the law. *Sprankle v. Dept. of Ins.* (Dec. 7, 2001), 7th Dist. No. 00CA275, 2001 WL 1647275, citing *Hi Rise, Inc. v. Ohio Liquor Control Comm.* (1995), 106 Ohio App.3d 151, 157, 665 N.E.2d 707 (where the First District follows this line of reasoning while voicing its hope that the Supreme Court revisit the

*Henry's Café* holding); *In re Appeal of Sheaffer* (1996), 116 Ohio App.3d 98, 111, 686 N.E.2d 1382; *VFW Post 1080 v. Ohio Liquor Control Comm.* (Nov. 13, 1996), Logan App. No. 8–96–8, at 3, 1996 WL 665911; *Zollinger v. Ohio State Racing Comm.* (1999), 133 Ohio App.3d 708, 714, 729 N.E.2d 808; *Mt. Vernon v. Ohio Liquor Control Comm.* (Nov. 6, 1996), Knox App. No. 96CA22, at 2, 1996 WL 752558; *Am. Legion Post 0046 v. Ohio Liquor Control Comm.* (1996), 111 Ohio App.3d 795, 800–801, 677 N.E.2d 384; *Jackson v. Bd. of Nursing Edn. & Nurse Reg.* (Oct. 30, 1987), Mahoning App. No. 86CA136, at 1, 1987 WL 20087; *Valan v. Cuyahoga Cty. Sheriff* (1985), 26 Ohio App.3d 166, 170, 26 OBR 385, 499 N.E.2d 377 (where the Eighth District characterizes the rule as well settled); *Jordan Motor Co. v. Ohio Bur. of Motor Vehicles* (Sept. 24, 1997), Summit App. No. 18305, at 3, 1997 WL 626581; *Garwood v. State Med. Bd. of Ohio* (1998), 127 Ohio App.3d 530, 534, 713 N.E.2d 468; *VFW Post 9622 v. Ohio Liquor Control Comm.* (1996), 109 Ohio App.3d 762, 770–771, 673 N.E.2d 166. Thereafter, we followed our *Sprankle* decision and rationale in *A & B Auto Sales, Inc. v. Ohio Motor Vehicle Dealers Bd.*, 7th Dist. No. 01BA49, 2002-Ohio-2787.

{¶ 29} Thus, appellant incorrectly states that we may modify his suspension or fine if we believe that it is too harsh or unfair. Because we find that appellant's wrongdoing is established by reliable, probative, and substantial evidence and is in accordance with the law, we may not modify his penalty or fine which is within the applicable bounds of the administrative agency's authority. There is no argument that the suspension in and of itself is outside these bounds. See R.C. 4729.16(A) (allowing a revocation or suspension). Accordingly, this assignment of error is overruled.

## ASSIGNMENT OF ERROR NUMBER THREE

{¶ 30} Appellant's third assignment of error contends:

{¶ 31} "The trial court erred in upholding any fine against Richard Petrilla since the fine was not authorized pursuant to R.C. 4729.16(a)."

{¶ 32} Under this assignment, appellant argues that the board was not permitted to impose any fine because the board suspended his license. He contends that the penalties are mutually exclusive. He relies on the language of R.C. 4729.16(A), which provides that the board may "revoke, suspend, * * * or may impose a monetary penalty" if the board finds a pharmacist or pharmacy intern:

{¶ 33} "(1) Guilty of a felony or gross immorality; (2) Guilty of dishonesty or unprofessional conduct in the practice of pharmacy; (3) Addicted to or abusing liquor or drugs or impaired physically or mentally to such a degree as to render the pharmacist or pharmacy intern unfit to practice pharmacy; (4) Has been

convicted of a misdemeanor related to, or committed in, the practice of pharmacy; (5) Guilty of willfully violating, conspiring to violate, attempting to violate, or aiding and abetting the violation of any of the provisions of this chapter, sections 3715.52 to 3715.72 of the Revised Code, Chapter 2925. or 3719. of the Revised Code, or any rule adopted by the board under those provisions; (6) Guilty of permitting anyone other than a pharmacist or pharmacy intern to practice pharmacy; (7) Guilty of knowingly lending the pharmacist's or pharmacy intern's name to an illegal practitioner of pharmacy or having professional connection with an illegal practitioner of pharmacy; (8) Guilty of dividing or agreeing to divide remuneration made in the practice of pharmacy with any other individual, including, but not limited to, any licensed health professional authorized to prescribe drugs or any owner, manager, or employee of a health care facility, residential care facility, or nursing home; (9) Has violated the terms of a consult agreement entered into pursuant to section 4729.39 of the Revised Code; (10) Has committed fraud, misrepresentation, or deception in applying for or securing a license or identification card issued by the board under this chapter or under Chapter 3715. or 3719. of the Revised Code."

{¶ 34} The state points out that the suspension was imposed due to the board's first and second legal conclusions that appellant had violated R.C. 4729.16(A)(1) and (2). On the other hand, the fine was imposed due to the board's third legal conclusion that he had violated R.C. 4729.16(A)(5). Thus, the state argues that both a suspension and a fine can be imposed since each is based upon different violations. The state cites two cases in support of this assertion.

{¶ 35} First, the state points to the following holding of the Eighth Appellate District:

{¶ 36} "R.C. 4729.57 details the conduct justifying disciplinary action by the board and provides gradations of penalties which the board may impose *for any one statutory violation. In addition,* the board argues that the imposition of two penalties was proper in this case because each was *based on different violations* of the Revised Code. We find this argument persuasive. The record demonstrates that the board's order revoking the pharmacy's license cites violations of the Revised Code wholly separate from those statutory violations which serve as the basis for the fine. Thus, we find that the board did not err by imposing both penalties." (Emphasis added.) *Distributors Pharmacy, Inc. v. Ohio State Bd. of Pharmacy* (1987), 41 Ohio App.3d 116, 118, 534 N.E.2d 914.

{¶ 37} Then, the state points out that the Tenth Appellate District held:

{¶ 38} "As to appellant's claim that neither [statute with language identical to R.C. 4729.16] authorizes the board to both impose a monetary penalty and revoke its license, we find the board does indeed have such power. *Although the board may not impose both penalties for any one violation* of [the statutes], the board

is empowered to impose both penalties where each penalty is based on *different violations* of the statutes. See *Distributors Pharmacy, Inc. v. Ohio State Bd. of Pharmacy* (1987), 41 Ohio App.3d 116, 117–118, 534 N.E.2d 914, 915–916. Since the board identified three separate violations of specific Revised Code sections in its conclusions of law, it was authorized to assess both penalties." (Emphasis added.) *Wesco Ohio Ltd. v. Ohio State Bd. of Pharmacy* (1988), 55 Ohio App.3d 94, 98–99, 562 N.E.2d 900 (where there were three types of violations, but the appellate court reversed two types and allowed multiple penalties for the third type).

{¶ 39} Here, the board identified three separate violations of specific Revised Code sections and merged two for the purposes of the penalty. Appellant argues in his reply brief that the sanctions were based upon the same conduct, and just because the state can fit that same conduct into different statutory violations does not mean that it can assess separate sanctions. The Eighth and Tenth District cases do not require separate types of acts to constitute separate violations. Rather, they merely require the identification and finding of separate violations. The statute lists various types of violations under the available penalties, and there is no indication that the statute is meant to be read as appellant argues.

{¶ 40} Additionally, there was separate conduct in this case. That is, the suspension was based partly upon a finding that appellant had submitted false prescription claims to the insurer and received money from said submissions. See findings of fact, paragraph three, and conclusions of law, numbers one and two. Yet, the fine was based upon appellant filling and dispensing false prescriptions to customers. See findings of fact, paragraph 4 through 13, and conclusion of law, number three.

{¶ 41} Moreover, we have five different patients at issue in this case who were each written between 12 and 253 unlawful prescriptions. Thus, there is more than one violation. Under appellant's argument, a pharmacist illegally dispensing a dangerous drug such as oxycodone to street dealers could sell thousands of bottles to thousands of customers/dealers but be subject to only one penalty, either a revocation or a fine. We refuse to adopt such a holding. This assignment of error is overruled.

{¶ 42} For the foregoing reasons, the decision of the trial court is hereby affirmed.

*Judgment affirmed.*

GENE DONOFRIO and DEGENARO, JJ., concur.