OPINION
{¶ 1} Appellant, Robert E. Belcher, appeals from a judgment of the Franklin County Court of Common Pleas affirming an order of appellee, the Ohio State Racing Commission ("commission"), sanctioning him after one of his horses tested positive for a prohibited substance.
 {¶ 2} Appellant is a licensed horse trainer in the state of Ohio. On September 19, 2001, Hats Off to Sam, a horse trained by appellant, won the sixth race at the Delaware County Fair, and was tested for illegal substances. The test was positive for hydromorphone, a class one narcotic analgesic also known by the trade name "Dilaudid." Hydromorphone has not been approved for equine use, and its presence in the body of a horse on race day is a violation of Ohio Adm. Code 3769-18-01(B)(1), which provides:
(B) It shall be the intent of this rule to protect the integrity of horse racing, guard the health of the horse, and safeguard the interest of the public and racing participants through the prohibition or control of drugs, medications and substances foreign to the natural horse. In this context:
(1) Except for detection levels of such non-steroidal anti-inflammatory drugs authorized for use by order of the commission, and except for those horses eligible for the use of furosemide as permitted by paragraph (B)(1)(b) of this rule, no horse entered to race shall carry in its body on race day any prohibited foreign substance.
 {¶ 3} As a result of the positive test, judges at the fairgrounds imposed upon appellant a $1,000 fine and a one-year full suspension, and required appellant to return the $17,514 purse. During the suspension, appellant and all horses owned and trained by him were ordered banned from all grounds under the jurisdiction of the commission. Appellant appealed this decision to the commission, and the matter was referred to a hearing officer who issued a report and recommendation in support of the suspension and fine, which the commission adopted. Appellant then appealed the matter to the common pleas court, which affirmed the commission's order.
 {¶ 4} In its June 2003 order, the court addressed appellant's claims that the laboratory test results were unreliable. Rejecting appellant's argument that the commission's finding of a violation was not supported by laboratory reports and testimony presented by Dr. Richard Sams, Director of the Ohio State University Analytical Toxicology Laboratory which conducted the tests on behalf of the commission, the court found that appellant had failed to offer any evidence contradicting credible testimony by Dr. Sams that the properly-conducted tests evinced that the horse had been given hydromorphone. The court also found that Dr. Sams was qualified to testify as to the lab results, and that appellant failed to show any substantive error in the laboratory procedures. Addressing appellant's argument that the independent laboratory results were insufficient to corroborate the Ohio lab's findings, the court pointed out that appellant had not presented his own expert witness to opine that either the Ohio or the independent lab's procedures and findings were erroneous. On the basis that appellant had not shown prejudice, the court also rejected appellant's claim that the handling of the specimens violated the rules and so merited a reversal of his sanction. Finally, the court rejected appellant's argument that he was prejudiced by the initial failure of Dr. Sams to reveal the results of a "secret" blood test which would have exonerated appellant. Pointing to Dr. Sams' testimony that he had not revealed the test result because the blood test was experimental, rendering the results unreliable, the court found appellant had not presented evidence supporting the validity of the blood test, and, thus, failed to show prejudice.
 {¶ 5} Appellant now assigns the following as error:
ASSIGNMENT OF ERROR NO. 1
The trial court erred by failing to reverse the Finding Order of ("Commission") issued April 23, 2002 ("Order") because the Commission lacked reliable, substantial, and probative evidence to support its findings, for reasons including but not limited to the following: (1) The undisputed evidence adduced by the Commission's own witness at the adjudication hearing revealed that no hydromorphone was found in the urine sample of the horse Hats Off To Sam, contrary to the Commission's findings; and (2) the Commission failed to disclose to Belcher, in advance of the adjudication hearing, that its own official laboratory conducted a blood test of the horse Hats Off to Sam whose results exonerated Belcher from the charges leveled against him by the Commission.
ASSIGNMENT OF ERROR NO. 2
The trial court erred by failing to reverse the Commission's Order because the Order is unjust, is contrary to law, and is against the manifest weight of the evidence presented at the adjudication hearing before the Commission's hearing officer held on or about February 11, 12, and 13, 2002, and contained in the official record of the above-captioned matter.
ASSIGNMENT OF ERROR NO. 3
In affirming the Commission's Order, the trial court erred by failing to apply the standard for review in administrative appeals, and in particular the trial court failed to discredit, among other things, the official laboratory's toxicology report ("Official Report"), the testimony of Dr. Sams, and the independent laboratory retest report, despite the existence of legally significant reasons for discrediting this evidence.
ASSIGNMENT OF ERROR NO. 4
In affirming the Commission's Order, the trial court erred by upholding the admission of the Official Report into evidence, for reasons including but not limited to the following: (1) the Official Report constitutes inadmissible hearsay; (2) was not proffered by the Commission's record custodian; (3) Dr. Sams cannot testify regarding the preparation of the Official Report; (4) Dr. Sams lacks personal knowledge to testify about the Official Report; and (5) Dr. Sams lacks personal knowledge of the sample collection procedures and testing performed with regard to the horse Hats Off to Sam as referenced in the Official Report.
ASSIGNMENT OF ERROR NO. 5
In affirming the Commission's Order, the trial court erred in its interpretation, application, and unlawful expansion of the scope of Ohio Administrative Code section 3769-18-12 relating to independent laboratory retests and corresponding reports. Furthermore, contrary to law, Belcher was not accorded his rights under that rule because he was denied a detailed laboratory report explaining and documenting the testing procedures and results relating to that retest.
ASSIGNMENT OF ERROR NO. 6
In affirming the Commission's Order, the trial court erred in its interpretation and application of Ohio Administrative Code section 3769-18-12 relating to the collection of blood and urine samples. To Belcher's detriment, the Commission violated its own rule for reasons including but not limited to the following: (1) the Commission failed to obtain from Hats Off to Sam the minimum volume of blood required under the Commission's rule; (2) the Commission failed to retain all portions of the urine samples; and (3) the Commission failed to store the urine samples in secure frozen storage.
 {¶ 6} In an administrative appeal, pursuant to R.C. 119.12, the trial court reviews an agency's order to determine whether the order is supported by reliable, probative and substantial evidence and is in accordance with law. In performing this review, the court of common pleas may consider the credibility of the witnesses as well as the weight and probative character of the evidence. To a limited extent, the standard of review permits the court of common pleas to substitute its judgment for that of the administrative agency; however, the court of common pleas must give due deference to the administrative resolution of evidentiary conflicts. Univ. of Cincinnati v. Conrad (1980),63 Ohio St.2d 108.
 {¶ 7} On appeal to this court, the standard of review is more limited. Unlike the court of common pleas, the court of appeals does not determine the weight of the evidence. In reviewing the decision of the court of common pleas, as to whether an agency's order is or is not supported by reliable, probative and substantial evidence, an appellate court's role is limited to determining whether or not the court of common pleas abused its discretion. Hartzog v. Ohio State Univ. (1985),27 Ohio App.3d 214. An abuse of discretion implies the decision is both without a reasonable basis and is clearly wrong.Angelkovski v. Buckeye Potato Chips Co. (1983),11 Ohio App.3d 159. This standard of review is limited to issues such as the weight of the evidence and credibility of the witnesses as to which the court of common pleas has some limited discretion to exercise. On questions of law, the court of common pleas does not exercise discretion and the court of appeals' review is plenary. Univ. Hosp., Univ. ofCincinnati College of Medicine v. State Emp. Relations Bd.
(1992), 63 Ohio St.3d 339.
 {¶ 8} All of appellant's assignments of error are related, in that they argue that the trial court abused its discretion in determining that the commission's decision was based upon reliable, probative and substantial evidence that appellant had violated Ohio Administrative Code provisions prohibiting a horse from competing while carrying a prohibited substance in its body. Thus, we will address the assignments of error together.
 {¶ 9} Appellant first claims that Dr. Sams, the only expert witness for the commission, admitted during cross-examination that there was no hydromorphone in the urine sample and that presence of drug was only inferred from the data. This court has recently rejected a similar argument. In Roberson v. Ohio StateRacing Comm., Franklin App. No. 03AP-480, 2004-Ohio-127, the appellant trainer argued that because no unaltered Albuterol was found in his horse's urine, no foreign substance was found in the horse's body on race day. In rejecting this claim, this court stated, at ¶ 16:
* * * The fact that the drug had been processed and combined with sulfates in the horse's body is irrelevant. The horse's urine was tested using reliable scientific drug testing methodology and came back with a positive result for Albuterol. All of appellant's arguments to the contrary cannot alter this fact. Therefore, the trial court did not abuse its discretion in this regard.
 {¶ 10} In the case at bar, the hearing officer found persuasive Dr. Sams' explanation that the drug breaks down in the body and will not appear in a urine sample in its original state. Thus, in order to test for the presence of hydromorphone, the lab uses hydrolysis to alter the sample and thereby detect the presence of hydromorphone glucuronide, upon which presence of hydromorphone may be inferred. We find there was evidence from which the commission and the trial court could reasonably conclude that the absence of pure hydromorphone in the urine was not relevant to the ultimate issue of whether a violation had occurred, and so appellant's argument is not well-taken.
 {¶ 11} Appellant also argues that he was not told of an additional blood test which produced a negative result for hydromorphone until the hearing before the commission's hearing officer, and that this failure to reveal exculpatory evidence was prejudicial to his defense and resulted in an erroneous finding of a violation. However, Dr. Sams testified that the blood test was experimental, so that its result was not scientifically valid; therefore, there was no duty to reveal its results because they were not relevant. To determine the reliability of scientific evidence, a court must consider: "(1) whether the theory or technique has been tested, (2) whether it has been subjected to peer review, (3) whether there is a known or potential rate of error, and (4) whether the methodology has gained general acceptance." Miller v. Bike Athletic Co. (1998),80 Ohio St.3d 607, 611, citing Daubert v. Merrell DowPharmaceuticals, Inc. (1993), 509 U.S. 579. Dr. Sams' testimony indicated that the blood test results would not have met this test, and appellant presented no evidence that the blood test results were reliable or would have been more reliable than the urine analysis results. Despite his argument that he only learned of the blood test during the hearing and did not have the opportunity to obtain expert testimony on this issue, the record indicates appellant did not seek a continuance in order to do so or ask to present additional testimony to the commission. Therefore, appellant has not shown prejudice from the alleged concealment of the blood test, and no error can be predicated upon it.
 {¶ 12} Appellant challenges the toxicology report as being inadmissible hearsay because Dr. Sams had no personal knowledge of what occurred during testing, did not qualify as custodian of records, and indicated he only "assumed" appropriate procedures were followed. Administrative agencies are not strictly bound by rules of evidence. See, e.g., Ohio State Racing Comm. v. Kash
(1988), 61 Ohio App.3d 256, 263; Petrilla v. Ohio State Bd. ofPharmacy, 153 Ohio App.3d 428, 2003-Ohio-3276, at ¶ 12. Even if the hearsay rule were strictly applied, Dr. Sams' testimony would qualify as an exception under Evid.R. 803(6), because he testified as to a report kept in the course of regularly conducted business, and appellant failed to present substantial credible evidence that the laboratory procedures utilized, and the results obtained, were not trustworthy. As a result, Dr. Sams was qualified to testify regarding the business record and did not need to have personally performed the lab work.
 {¶ 13} Appellant challenges the report of the independent laboratory on the basis that it was a scant, one-page, two-sentence report, and claims its lack of detail hindered appellant's ability to refute its results. While acknowledging that the appropriate rule only requires the issuance of a "report" without specifying what type of document would comply with the requirement, appellant argues common usage of the word "report" suggests a more detailed, lengthy document was in order. He claims the brevity of the report made it impossible for him to assail its conclusions, and, thus, deprived him of a defense. Ohio Adm. Code 3769-18-12(B) provides, in part:
(1) The trainer or owner of a horse for which a positive test result was reported may request that the retained specimen or a portion thereor [sic] be retested in accordance with this section. A commission approved independent laboratory or the official laboratory must perform the retest;
* * *
(C) The independent laboratory shall send a confidential written report of the results of its tests to the commission, which in turn shall send a confidential report to the trainer and owner forthwith.
 {¶ 14} The report in question confirmed the findings of the Ohio laboratory, and stated the sample number, the fact that hydromorphone was found, and the type of test used. The rules do not define what constitutes a "report," but the facts are clear that the state satisfied its obligation to provide retesting by an independent laboratory upon appellant's request, and that the report gave specific information about the methods used and the result reached. The record indicates that appellant did not seek a more comprehensive report, and the rules do not require the state to provide one. Thus, this argument is not well taken.
 {¶ 15} Finally, appellant argues that sample collection and retention in this case was flawed, in that the state did not get the minimum volume of blood, did not retain all of the urine sample not used in testing, and failed to securely store urine so it leaked.
 {¶ 16} Ohio Adm. Code 3769-18-12(A) provides:
(A) The commission veterinarian shall, whenever physically possible, collect a minimum of fifty milliliters of urine and a minimum of thirty milliliters of blood specimens from each horse selected for testing by the judges.
(1) The official laboratory shall retain all portions of each specimen in secure, limited access, frozen storage at a site approved by the commission for the time period required by this section;
(2) If the results of tests on a specimen are negative, the official laboratory may discard all portions of said specimen;
(3) If the results of tests on a specimen are positive, the official laboratory shall retain all portions of said specimen until the matter has been finally adjudicated or until directed to forward the specimen or a portion thereof to another laboratory for independent analysis;
(4) The trainer and/or owner shall not be entitled to a retained specimen in those instances where the official laboratory deems it necessary to consume the entirety of an official specimen for official laboratory testing purposes.
 {¶ 17} Regarding appellant's claim that the state did not obtain 30 milliliters of blood, and, thus, did not comply with code requirements, appellant has failed to show prejudice. In addition to the fact that the code only requires that 30 milliliters be obtained "whenever physically possible," the urinalysis results provided the evidence of the violation, not the blood test, and so the quantity of blood obtained was not pertinent to the findings and sanctions in this case. Nor is appellant able to demonstrate prejudice arising out of his claim that the state did not strictly follow retention and disposal rules, and the evidence presented showed that samples were handled properly by the lab throughout the course of testing.
 {¶ 18} In his reply brief, appellant argues that Dr. Sams at first indicated an initial screening using an ELISA test was positive for hydromorphone, but then testified that lab employee, Christine Long, had subsequently assessed ELISA results and determined no hydromorphone was present. Appellant argues the inquiry would usually have ended there with no further testing and no charges against the trainer, and that the laboratory erred by doing further analysis of the sample. Inasmuch as this argument constitutes a new assignment of error, appellant was not entitled to raise it in his reply brief, and we are not required to address it. See, e.g., State v. Hubbard, Franklin App. No. 03AP-286, 2004-Ohio-553; Trout v. Ohio Dept. of Edn., Franklin App. No. 02AP-783, 2003-Ohio-987; and State v. Nichols, Coshocton App. No. 01 CA 016, 2002-Ohio-4048, citing Sheppard v.Mack (1980), 68 Ohio App.2d 95.
 {¶ 19} Based upon these considerations, we cannot say the trial court's decision affirming the commission's order was arbitrary, unreasonable or unconscionable, and so the court did not abuse its discretion in concluding the commission's decision was based upon reliable, probative and substantial evidence. Appellant's six assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
Bryant and Petree, JJ., concur.