WESCO OHIO LIMITED, D.B.A. TRI-STATE PHARMACEUTICAL, APPELLANT, *v.* OHIO STATE BOARD OF PHARMACY, APPELLEE.

(No. 87AP-766—Decided
June 16, 1988.)

*Baker & Hostetler, Mark D. Senff*
and *Daniel G. Hale,* for appellant.
*Anthony J. Celebrezze, Jr.,* attorney general, and *Yvette McGee,* for appellee.

STRAUSBAUGH, J. This is an appeal by appellant from a judgment of the court of common pleas affirming a decision of the Ohio State Board of Pharmacy. That decision revoked appellant's certificate as a wholesale distributor of dangerous drugs and its license as a wholesaler of controlled substances. Appellant was also fined $2,000,000.

Appellee, the Ohio State Board of Pharmacy ("board") issued a citation on March 10, 1986 to appellant, Wesco Ohio Limited, d.b.a. Tri-State Pharmaceutical ("Tri-State"), for one hundred twenty-one alleged violations of various Ohio and federal laws regarding the wholesale distribution of drugs. Another citation was issued on May 9, 1986 for three additional infractions.

The board held a hearing on June 25, 1986 regarding the citations. Following a stipulation as to certain revisions in the citations, Tri-State entered an admission as to the accuracy of the facts set forth in the citations, but made no admission as to the legal implications of those facts. Based upon the findings of fact, the board found that Tri-State had received, held and offered for sale drugs that were "misbranded" because they were labeled "clinic package — not for pharmacy sale" and "for hospital use only — not for resale." Similarly, the board found that Tri-State sold misbranded pharmaceuticals because those pharmaceuticals were labeled as "clinic packs" or as "samples." Additionally, the board also found that Tri-State offered for sale a generic drug which did not have effective new drug applications, in violation of Section 355, Title 21, U.S. Code, and R.C. 3715.64(A). The board then imposed the following penalties for the alleged violations: on the basis of the conduct set forth in paragraphs one through thirteen of the citation, the board revoked Tri-State's registration certificate for the wholesale distribution of dangerous drugs; on the basis of the conduct described in paragraphs four through one hundred sixteen of the citation, the board fined Tri-State $2,000,000; finally, on the basis of the conduct described in sixty-five specified counts, ranging from paragraphs four through one hundred sixteen of the citation, the board revoked Tri-State's license as a wholesale distributor of controlled substances.

Tri-State perfected an appeal to the Franklin County Court of Common Pleas. The basis for Tri-State's appeal was that many of the violations found

by the board could not be construed as violations of either Ohio or federal law. Tri-State also argued that although the board is authorized to revoke a wholesale distributor's license *or* to impose a monetary penalty, it has no power to impose both penalties for the same violations. Additionally, Tri-State claimed that the board's monetary penalty of $2,000,000 was excessive. Finally, Tri-State alleged that the board considered matters outside the scope of the record, thus violating basic principles of due process. The court of common pleas, on July 14, 1987, affirmed the order of the board and found it to be supported by substantial, reliable and probative evidence. Specifically, the common pleas court found that the sale of a drug product with restrictive legends, such as "sample — not for resale," is false and misleading in any particular, pursuant to R.C. 3715.64(A). Accordingly, the court found that the drugs at issue were misbranded.

On appeal, Tri-State now asserts the following assignments of error:

"1. The trial court erred by finding that the board's decision and order [were] supported by substantial, reliable and probative evidence, and [that] such decision and order [were not] contrary to law.

"2. The trial court erred by affirming the board's decision that the sale of properly packaged pharmaceuticals labeled 'clinic package' and 'for hospital use only' is prohibited by either Ohio or federal law.

"3. The trial court erred by affirming the board's decision that Tri-State caused drugs to be misbranded because they were labeled as 'clinic packs' and/or as 'samples.'

"4. The trial court erred in finding that the evidence before the board sustained the conclusion that Tri-State sold sample drugs in violation of O.R.C. § 3719.81.

"5. The trial court erred in sustaining the board's decision that the sale of generic versions of brand name drugs violated federal law.

"6. The trial court erred by not finding that the board committed substantial legal errors in imposing sanctions upon Tri-State.

"7. The trial court erred by affirming the board's decision in light of clear violations of due process of law."

It is important to note initially that appellant does not challenge the propriety of the board's conclusion regarding the sixty-nine counts of buying and selling repackaged pharmaceuticals or the sale of drugs at retail to an employee. Rather, Tri-State is appealing only that portion of the board's order regarding the sale of properly packaged drugs labeled as either "samples," "clinic packs," or "for institutional use only." Tri-State also appeals from that portion of the board's order regarding the sale of generic versions of approved brand name pharmaceuticals.

Tri-State maintains under its second and third assignments of error that the court of common pleas erred when it affirmed the board's order regarding the sale of properly packaged drugs containing restrictive legends.

This court has recently held that the sale of properly packaged pharmaceuticals which contain restrictive legends, such as "for hospital use only," does not violate R.C. 3715.64 (A) and 3715.52. *Miami-Luken, Inc.* v. *Ohio State Bd. of Pharmacy* (1987), 39 Ohio App. 3d 161, 530 N.E. 2d 945. Since this case is nearly identical to that case, we conclude that the court erred when it found that the board's order was supported by reliable, substantial and probative evidence. This same reasoning also extends to the sale of pharmaceuticals which are labeled as "clinic packs" or as

"samples." Under either federal or Ohio law it is clear that the sale of samples or of clinic packs, so long as the labeling of such pharmaceuticals is not misleading as to dosage, description, strength, or use, does not constitute a violation of R.C. 3715.64(A). The second and third assignments of error are sustained.

Tri-State next argues, under its fourth assignment of error, that the trial court erred in finding that the evidence supported the board's conclusion that Tri-State sold sample drugs in violation of R.C. 3719.81. That section, as well as R.C. 2925.36, prohibits the sale of samples of prescription drugs. In Tri-State's view, had the board limited its finding to the sale of samples, there could be no argument but that Tri-State violated the statutes. However, because the board found that Tri-State sold "samples and/or clinic packs," Tri-State contends that no violation was proved. We agree.

R.C. Chapter 3719 provides no guidance as to whether a "sample" drug includes drugs sold as "clinic packs." Moreover, no Ohio cases specifically address this issue. Compare *Byrd* v. *Ohio State Bd. of Pharmacy* (Sept. 8, 1987), Warren App. No. CA87-02-010, unreported. However, "sample drug" is defined by R.C. 2925.01(M) as: "* * * a drug or pharmaceutical preparation * * * that, at one time, had been placed in a container *plainly marked as a sample* by a manufacturer." (Emphasis added.) We find this definition applicable for purposes of R.C. 3719.81.

Inasmuch as violations of R.C. Chapter 3719 are punishable by the board pursuant to R.C. 4729.57(A)(5), R.C. 3719.81 is in the nature of a criminal statute. Given the definition of a "sample drug" as one which is "plainly marked as a sample," strict construction dictates that a drug marked as a "clinic pack" does not constitute a "sample drug" for purposes of R.C. 3719.81. Appellant's fourth assignment of error is well-taken and is sustained.

Appellant's fifth assignment of error challenges the trial court's determination that the board's decision regarding the sale of generic versions for brand name drugs was proper. Tri-State contends that since the sale of generic drugs was not specifically prohibited by federal law until 1983, such sales before 1983 could not have constituted violations of either federal or state statutes.

The board found, at paragraphs 47, 54, 57 through 59, and 89 of the citation, that Tri-State offered for sale a generic drug known as "Furosemide," which did not have effective new drug applications, in violation of Section 355, Title 21, U.S. Code, and R.C. 3715.64(A). The alleged illegal activity in all but one paragraph (paragraph 54) occurred well before the United States Supreme Court's decision in March 1983 regarding the legality of such sales. *United States* v. *Generix Drug Corp.* (1983), 460 U.S. 453. Prior to the decision in *Generix*, there was substantial disagreement among federal circuit courts as to whether a product which was a generic version of a brand name drug, which already had an effective new drug application, was a "new drug" and therefore subject to the requirement that a new drug application be approved prior to marketing. That dispute was resolved by *Generix, supra,* when the Supreme Court held that a generic version of a previously approved brand name drug was required to have its own effective new drug application before it could be legally sold.

Although the precise legal premise for appellant's position is not entirely clear, it appears that its argument proceeds upon the idea that the *Generix*

decision cannot be applied retroactively. Essentially, Tri-State urges that since federal law was unclear before 1983 as to whether generic drugs required effective new drug applications, such fact bars prosecution by the board.

While appellant's argument is normally advanced in the context of criminal statutory construction, the principle which governs such construction arguably is applicable in the context of quasi-criminal statutes such as R.C. 3715.52(A).[1] That principle is founded on due process concepts of fair warning to adversely affected parties. See, *e.g.*, *Bouie* v. *City of Columbia* (1964), 378 U.S. 347; *Rose* v. *Locke* (1975), 423 U.S. 48, 49-50; *Marks* v. *United States* (1977), 430 U.S. 188, 191-197; *State* v. *George* (1975), 50 Ohio App. 2d 297, 305-306, 4 O.O. 3d 259, 264, 362 N.E. 2d 1223, 1229. For the reasons which follow, we reject appellant's invocation of that principle under the facts of this case.

First, it is not entirely clear that the board was attempting to use the holding of *Generix, supra,* in a retroactive manner. Appellant never raised this issue before the board and *Generix* was not cited by the board in either the complaint or its order.

Second, even assuming *Generix, supra,* was given retrospective application, appellant was not denied due process. Although it is true that the issue presented to the Supreme Court in *Generix* had not been definitely decided, it cannot be denied that the federal courts were divided as to whether the sale of generic drugs required effective new drug applications from the Food and Drug Administration. This conflict among the circuits

was precisely the reason the court considered the issue. Moreover, the *Generix* decision neither constituted a clear break with precedent nor did it construe the term "drug" under Section 321(g)(1), Title 21, U.S. Code, in an unforeseeable manner. There was no precedent from which the Supreme Court broke and the result reached was clearly foreseeable given the procedural posture of *Generix*. Accordingly, appellant's fifth assignment of error is overruled.

Appellant next asserts, in its sixth assignment of error, that the trial court erred in affirming the penalties imposed by the board. It is appellant's position that the penalties were both unreasonable in amount and unauthorized as a matter of law pursuant to R.C. 4729.56.

Since this court has found merit to appellant's second, third and fourth assignments of error, we conclude that the amount of the monetary penalty imposed must necessarily be recomputed by the board upon remand. As such, any further claim of error with respect to the specific amount imposed by the board is premature at this point.[2]

As to appellant's claim that neither R.C. 4729.56 nor 4729.57 authorizes the board to both impose a monetary penalty and revoke its license, we find the board does indeed have such power. Although the board may not impose both penalties for any *one* violation of R.C. 4729.56(A) through (D) or 4729.57(A)(1) through (7), the board is empowered to impose both penalties where each penalty is based on different violations of the statutes. See *Distributors Pharmacy, Inc.* v. *Ohio State Bd. of Pharmacy* (1987), 41 Ohio

---

[1] Even though R.C. 3715.52(A) only prohibits the sale of drugs which are misbranded, R.C. 3715.64(A)(13) defines "misbranded" as alleged violations of Section 355, Title 21, U.S. Code.

[2] We note, however, that in its brief the board indicates that the proper amount of the fine, regardless of our disposition of this matter, totalled $858,000.

App. 3d 116,117-118, 534 N.E. 2d 914, 915-916. Since the board identified three separate violations of specific Revised Code sections in its conclusions of law, it was authorized to assess both penalties.

Based on the foregoing, appellant's sixth assignment of error is sustained to the extent it challenges the amount of the monetary penalty. The assignment is, however, overruled as it relates to the power of the board to impose either of the sanctions specified in R.C. 4729.56 or 4729.57 for distinct violations of the Revised Code.

Appellant finally contends that the trial court denied it due process of law when it affirmed the board's decision which took administrative notice of appellant's alleged "practice" of drug diversion. In appellant's view, since the matter was submitted to the board on a stipulated set of facts, it was error for the board to partially premise its decision on testimony adduced at other hearings.

While we agree with appellant's assertion in the abstract, we are unsure as to whether any such error is present on this record. First, although appellee, in its brief to the trial court, stated that appellant was cited for engaging in drug diversion, "a practice within the pharmaceutical industry of which the Board of Pharmacy could take administrative notice * * *," such statement and the subsequent paragraphs in that brief suggest only that the board was aware of the practice generally. The statements do not indicate that the board relied on that knowledge to infer that appellant was also engaged in the drug diversion. In fact, the board acknowledged that the matter was submitted on a stipulated set of facts.

Second, our review of the hearing transcript and the board's order indicates only that the board considered the stipulated evidence. There is absolutely no indication, beyond *appellant's* reference to matters outside the record, that the board based its order on outside information. Accordingly, appellant's seventh assignment of error is overruled.

Appellant's second, third and fourth assignments of error are sustained, while the fifth and seventh assignments of error are overruled. The sixth assignment of error is sustained in part and overruled in part. Based on this disposition of the other assignments of error, appellant's first assignment of error is sustained in part and overruled in part. For the reasons set forth in this opinion, the judgment of the common pleas court is affirmed in part and reversed in part, and the cause is remanded to that court for further proceedings.

*Judgment affirmed in part, reversed in part, and cause remanded.*

REILLY and BOWMAN, JJ., concur.